UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EUGENE CASOLE**<br>**2983 Friends Road**<br>**Annapolis, Maryland 21401,**<br><br>    Plaintiff,<br>    Civil Action No. _____<br>        v.<br><br>**MIKE JOHANNS, Secretary,**<br>**United States Department of Agriculture**<br>**1400 Independence Avenue, SW**<br>**Washington, DC 20250,**<br><br>    Defendant. | |

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**
(Reprisal and National Origin)

**Nature of the Claim**

1.      Plaintiff, Eugene Casole, respectfully submits this Complaint for employment discrimination based on reprisal for prior Equal Employment Opportunity (EEO) activity and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §2000e-16, and as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (hereinafter collectively referred to as "Title VII").

**Jurisdiction and Venue**

2.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f) and 16(c), and 28 U.S.C. §§1331 and 1343(a).

3. Venue properly lies in this judicial district pursuant to 28 U.S.C. 1391(b) because all of the actions complained of herein took place in the District of Columbia within the jurisdiction of the United States Court for the District of Columbia and the Defendant is located in that judicial district.

### Parties

4. Plaintiff Eugene Casole is a white male citizen of the United States of Italian national origin, and is a current employee of the United States Department of Agriculture (hereinafter "USDA" or "Agency").

5. Defendant Mike Johanns is the Secretary of Agriculture and head of the USDA. USDA is an agency of the United States government within the meaning of 42 U.S.C. §2000e-16(a). As the Secretary of Agriculture, Defendant is responsible for the employment practices and procedures within USDA, and is named in his official capacity, pursuant to 42 U.S.C. §2000e-16(c).

### Procedural History

6. Plaintiff has exhausted his administrative remedies:

    a. On or about February 24, 2003 he filed a formal complaint of discrimination (Agency Case No. 030295) on the basis of reprisal for prior EEO activity. By letter dated April 23, 2003, the Agency accepted the complaint's issue for investigation. Mr. Casole timely requested a hearing and the case was assigned to Administrative Judge Richard W. Furcolo of the Equal Employment Opportunity Commission's (EEOC) Washington Field Office. On August 5, 2004, the Agency moved for findings and conclusions of law without a hearing to

which Mr. Casole filed an opposition on August 27, 2005. On September 29, 2004, Judge Furcolo issued a decision finding of no discrimination by adopting the Agency's analysis. On November 30, 3004 the Agency adopted Judge Furcolo's decision. Mr. Casole timely appealed Judge Furcolo's decision to the EEOC Office of Federal Operations (OFO). On April 26, 2004, OFO affirmed Judge Furcolo's decision. Mr. Casole is now filing this civil action regarding Agency Case No. 0302295 within 90 days of receipt of OFO's decision pursuant to 29 C.F.R. §1614.407(c).

  b. On or about November 25, 2003, Mr Casole filed a formal complaint of discrimination (Agency Case No. 040128) on the basis of reprisal for prior EEO activity. By letter dated March 1, 2004 the Agency accepted the issue for investigation. Mr. Casole timely requested a hearing and the case was assigned to Administrative Judge Gladys O. Collazo of the EEOC's Washington Field Office. On October 27, 2004, Mr. Casole withdrew his request for a hearing and requested that the case be remanded back to the Agency for it to issue a final decision. Judge Collazo dismissed the case the next day (October 28, 2004), and referred the matter back to the Agency for a final decision. The Agency never issued a decision. Mr. Casole is now filing this civil action regarding Agency Case No. 040128 pursuant to 29 C.F.R. §1614.407(b) because more than 180 days have passed since he filed his individual complaint and the Agency has not taken a final action on his case.

  c. On or about April 26, 2004 Mr. Casole filed a formal complaint of discrimination (Agency Case No. 040397) on the basis of reprisal for prior EEO activity. On or about June 3, 2004 he filed another complaint of discrimination (Agency Case No. 040468), also on the basis of reprisal. By letters dated June 5, 2004, and July 7, 2004 the Agency accepted the complaints for investigation of four issues, and consolidated the two complaints for investigation

and processing. Mr. Casole timely requested a hearing and the case was assigned to Administrative Judge Gerald Goldstein of the EEOC's Washington Field Office. On June 2, 2005, Mr Casole withdrew his request for a hearing and requested the case be remanded back to the Agency for it to issue a final decision. The Agency never issued a decision. Mr. Casole is now filing this civil action regarding Agency Case Nos. 040397 and 040468 pursuant to 29 C.F.R. §1614.407(b) because more than 180 days have passed since he filed his individual complaint and the Agency has not taken a final action on his case.

      d.  On or about January 5, 2005 Mr. Casole filed a formal complaint of discrimination (Agency Case No. 050222) on the basis of reprisal for prior EEO activity. No investigation nor any type of decision has yet been issued in this case. Mr. Casole is now filing this civil action regarding Agency Case No. 050222 pursuant to 29 C.F.R. §1614.407(b) because more than 180 days have passed since he filed his individual complaint and the Agency has not taken a final action on his case.

## Factual Allegations

7. At all times relevant to this complaint, Mr. Casole was a Compliance Specialist, GS-13, Office of Program Evaluation and Enforcement and Review (OPEER), Evaluation and Enforcement Division (EED), Food Safety and Inspection Service (FSIS), United States Department of Agriculture (USDA), Washington, DC.

8. Mr. Casole has been employed by USDA from September 26, 1986, and has been in his current position since 1995.

9. At all times relevant to this complaint, Mr. Casole's first-line supervisor was Wayne N. Bosler, Program Manager, OPEER. Mr. Casole's second, third, and fourth-line supervisors were Scott Safian, Richard Van Blargan, and Ronald Hicks, respectively.

10. At all times relevant to this complaint, Marcella Castillo was an investigator with FSIS Labor and Employee Relations Division (LERD). Ms. Castillo's first line supervisor was Kristie Kelm, Branch Chief, LERD.

11. <u>Mr. Casole's Prior EEO Activity</u>

   a.. On February, 13, 1997 Mr. Casole was falsely accused of sexually harassing an FSIS employee. FSIS suspended him for five days without due process as discipline for the alleged harassment, so, on or about August 7, 1997, Mr. Casole filed a formal complaint of employment discrimination against FSIS based on sex (male) (Agency Case No. FSIS-970741). Mr. Casole and FSIS later entered into a settlement agreement, which resolved the case.

12. <u>Retaliation by Non-Selection (Supervisory Compliance Officer) (Agency Case No. 030295)</u>

   a. On November 26, 2002, Mr. Casole was not selected for a GS-1801-14 Supervisory Compliance Officer (Program Manager) position in the FSIS criminal/civil branch for which he had applied. Instead, the selecting official, Scott Safian, selected David Lavers and David Langley to fill this position.

   b. The selection process consisted of written applications and a Behavioral Event Interview (BEI) administered by a panel which reported to Mr. Safian. Mr. Safian reviewed the written applications, the BEI report, and consulted with Mr. Van Bargan and Mr. Hicks in making his selection.

   c. At the time of his non-selection Mr. Casole had over eight years of experience reviewing and processing civil and criminal complaints. He had reviewed over 200 civil, criminal, and administrative cases and had been assigned to numerous complex cases. He had been appointed acting program manager for the civil and criminal branches of OPEER on

5

numerous occasions. He had also consistently received strong performance reviews and cash performance awards. He was clearly more qualified for the position than the selectees.

        d.      Mr. Safian created a biased selection process. He assigned arbitrary numerical values to elements of candidates written applications, thereby exaggerating the selectee's qualifications. Mr. Safian also appointed friends of Mr. Lavers' to the BEI panel. These persons exaggerated Mr. Lavers' qualifications in order to justify his selection.

   13.     <u>Retaliation by Reprimand (Agency Case No. 040128)</u>

        a.      The Agency issued an official letter of reprimand to Mr. Casole dated June 26, 2003, which Mr. Casole did not receive until July 16, 2003. The reprimand alleged that Mr. Casole had made inappropriate comments during a meeting between FSIS officials and representatives of Salem Packing Company Inc., of Salem, New Jersey. Marcella Castillo, FSIS, LERD, was the deciding official in this incident. Mr. Casole named both Ms. Castillo and Kristie Kelm, Branch Chief, LERD, as discriminating officials.

        b.      The Agency did not properly investigate the alleged incident before issuing the letter of reprimand. Mr. Bossler conducted the investigation at Mr. Safian's direction. USDA's personnel department was not involved. Mr. Safian instructed Mr. Bossler not to interview Mr. Casole about the alleged remarks.

        c.      Witnesses to Mr. Casole's remarks who reported that Mr. Casole's remarks were not offensive were ignored by Agency decision makers. Significantly, the letter of reprimand did not state that anyone had actually been offended. The reprimand was based solely on an Agency manager's belief that the remarks were offensive.

   14.     <u>Retaliation by Non-Selection (Deputy Director)  (Agency Case No. 040397)</u>

        a.      On March 5, 2004, the Agency did not select Mr. Casole for the position

6

of GS-1801-14, Deputy Director in the FSIS Compliance and Investigation Division (CID). Instead, Mr. Martin Hickman was selected for the position. Mr. Zygmunt Sala, Director, CID, was the selecting official.

      b.     At the time of his non-selection Mr. Casole had worked for USDA for 18 years and had worked for FSIS for 9 years.

      c.     The selection process for the Deputy Director's position was arbitrary, biased and irregular. No interviews were conducted and no selection panel was convened. No one from USDA human resources advised Mr. Sala in this selection. Instead, Mr. Sala devised his own system for evaluating candidates. Mr. Sala rated each candidate in nine (9) different areas of expertise. These nine areas were not qualifications contained in the job announcement. The nine areas were arbitrarily created by Mr. Sala to justify his decision.

      d.     Mr. Sala's selection process also ignored FSIS personnel directives requiring the consideration of candidates performance appraisals and merit pay.

      e.     At the time of his selection Mr. Hickman was under investigation for sexual harassment. Other employees at FSIS were surprised that Mr. Hickman had been selected.

      f.     Mr. Sala made his selection only with the concurrence of Mr. Hicks and Mr. Blargan. Mr. Blargan admitted during the Agency's investigation that he and Mr. Sala had discussed Mr. Hickman's selection. Mr. Blargan and Mr. Sala specifically discussed whether and how Mr. Sala had evaluated the candidates qualifications.

    15.    <u>Retaliatory Detail to Omaha, Nebraska  (Agency Case No. 040397)</u>

      a.     On February 11, 2004, Mr. Van Blargen detailed Mr. Casole to the FSIS Technical Service Center (TSC) in Omaha, Nebraska from February 17, 2004, until March 12,

2004. Mr. Van Blargen did this because the Agency had initiated an investigation into whether Mr. Casole "reportedly engaged in improper conduct by making unsolicited, inappropriate, and unsubstantiated remarks to another OPEER employee while on duty." FSIS began the investigation of these allegations on February 23, 2004.

      b.      The TSC provided no substantive work for Mr. Casole, even though Mr. Casole had been told that the TSC had a need for his specific expertise. In Omaha Mr. Casole was assigned work reviewing state meat processing regulations, management protocols, and company self-assessments. This work could have been performed by lower-level USDA employees already assigned to Omaha.

      c.      Senior management at FSIS ordered this detail in order to punish Mr. Casole for his past EEO activity. Mr. Safian demonstrated his bias when questioned about the detail by saying "I finally got him (Casole)." To the best of Mr. Casole's knowledge, no other employee had ever been sent on a similar detail due to a pending investigation.

      d.      The detail was also unnecessarily difficult for Mr. Casole. Under normal circumstances Mr. Casole travels each weekend to care for his elderly ailing mother in Philadelphia. His detail to Omaha prevented Mr. Casole from continuing to travel to help his mother. Mr. Van Blargen was aware of these facts. Mr. Van Blargen could have avoided these difficulties had he chosen to detail Mr. Casole to other offices in Washington, D.C., or in the surrounding states. However, Mr. Van Blargen chose to send Mr. Casole halfway across the United States, at great monetary cost to the Agency and personal cost to Mr. Casole.

16.    Increasingly Hostile Work Environment (Agency No. 040468)

      a.      Early in the week of April 22, 2004, Mr. Casole received information that the Albany District Office of FSIS had shut down a firm in Fall River, Massachusetts, and that

the plant owner had requested an expedited hearing. The file was scheduled to arrive at Mr. Casole's office on April 21 or 22, 2004. USDA Headquarters received the file from Albany late in day on April 22, 2004.

      b.      Mr. Safian and Mr. Casole had discussed Mr. Casole's role in processing the expedited hearing request. They agreed that Mr. Casole would draft several letters and forward the request to FSIS office of General Counsel on April 23, or 24, 2004.

      c.      On April 22, 2004, Mr. Casole requested and Mr. Safian approved two (2) hours of annual leave for Mr. Casole, from 2:30 pm to 4:30 pm, that day. Mr. Casole began work on the expedited hearing request on April 22, 2004, but was unable to complete this task before he left for the day because the file had not yet arrived from Albany.

      d.      On April 23, 2004, Mr. Casole received an e-mail from Mr. Safian admonishing him for not completing his work on the expedited hearing request before taking his scheduled leave on April 22. Mr. Safian later entered Mr. Casole's office and angrily asked for the Albany case file. After Mr. Casole returned the file Mr. Safian said "I'll give it to someone who wants to work."

      e.      Since April, 2004, Mr. Casole felt forced to decline to serve as acting Program Manager for his unit because of these and other negative encounters with Mr. Safian, which had created a hostile work environment for Mr. Casole. Co-workers have told Mr. Casole that his refusal has adversely affected his performance ratings and evaluations. Acting for the Program Manger is an element of Mr. Casole's performance standards.

17.      <u>Other Hostile Environment Work Incidents (Agency No. 040468)</u>

      a..      Mr. Safian has created a hostile work environment by subjecting Mr. Casole to numerous other incidents of retaliation and harassment. In December 2002, Mr.

Safian initiated an investigation into Mr. Casole's use of 44 hours of sick leave to care for his ailing mother.

      b.     The investigation was completely unwarranted. USDA policy allows employees to take up to 480 hours of sick leave each year to care for family members. Mr. Safian was aware of the reasons for Mr. Casole's leave and his mother's illness because Mr. Casole had taken extended sick leave to care for his mother since Mr. Safian had become his supervisor.

      c.     Other incidents have only increased Mr. Casole's levels of fear and uncertainty, and have created a hostile work environment. On March 4, 2003, Mr. Safian criticized Mr. Casole's work during a conference call with Mr. Casole and several headquarters and field personnel. On March 24, 2003, Mr. Safian issued an unwarranted memo admonishing Mr. Casole for his conduct at meetings on March 4, and 5, 2003. On June 17, and June 30, 2003, Mr. Safian questioned Mr. Casole's supervisors about his whereabouts. On those dates Mr. Casole was out of the office on approved leave. On August 7, 2003, Mr. Bossler advised Mr. Casole to forward a labeling dispute to another department to avoid giving Mr. Safian an issue to use against him. On November 5, 2003, Mr. Safian required Mr. Casole to ask two Program Managers to alter their annual leave requests despite Mr. Casole recommendation that the matter be left alone.

    18.    <u>Reprisal Based on Proposed Suspension and Suspension (Agency Case No. 050222)</u>

      a.     By letter dated July 7, 2004, FSIS, LERD proposed to suspend Mr. Casole for five (5) days. The proposed suspension stated that Mr. Casole had, on January 27, 2004, called a female employee, Ms. Vella Holmes, a "vamp" and had later returned to her office with a dictionary in order to read her the definition of the word. The letter also stated that Mr. Casole

had, on January 29, 2004, after apologizing to Ms. Holmes for the January 27 incident, leaned over and kissed her on the cheek. On August 27, 2004, LERD issued a letter suspending Mr. Casole for five (5) workdays, for five work days from September 20, 2004, through September 24, 2004.

   b. LERD officials did not conduct a complete investigation of the January 27 or January 29, 2004, incidents. The investigator ignored significant inconsistencies in alleged witnesses statements. LERD officials ignored Ms. Holmes's stated desire to allow Mr. Casole's comments to pass with an apology. The investigation and suspension were initiated entirely by LERD officials.

   c. The LERD investigator removed Mr. Casole's comments and actions from their context. Mr. Casole and Ms. Holmes shared an informal relationship, which included jokes and teasing. LERD investigators also ignored Mr. Casole's Italian cultural heritage, which includes kissing during greetings and other non-sexual situations.

   d. LERD punished Mr. Casole more severely than other employees due to his prior EEO activity. Mr. Casole had named the investigator's direct supervisor, Kristie Kelm, in a prior complaint. In the course of the investigation of LERD's suspension Mr. Casole provided extensive evidence of misconduct on the part of other FSIS employees, however none of this evidence was investigated or considered.

 19. As a direct result of the Agency's actions Mr. Casole has suffered physical, emotional and economic damages, including but not limited to: emotional pain and suffering; anxiety; depression; stress; aggravation; and humiliation; and loss of past, present and future income, including loss of pay and benefits.

## COUNT ONE

### REPRISAL IN VIOLATION OF TITLE VII
### (Non-Selection, Supervisory Compliance Officer)

20. Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 19, above.

21. Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his past EEO activity when, on November 26, 2002, he was not selected for the position of Supervisory Compliance Officer (Program Manager), GS-1801-14.

22. Mr. Casole was the best qualified candidate. However, the Agency manipulated the process to select other candidates.

23. As a direct result of these actions, Mr. Casole suffered the damages as described in ¶19 of this complaint.

## COUNT TWO

### REPRISAL IN VIOLATION OF TITLE VII
### (Hostile Environment)

24. Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 23, above.

25. The Agency willfully, intentionally, maliciously and unlawfully retaliated against Mr. Casole because of his past EEO activity when its managers took the following actions; among other actions:

    a. In December 2002, Mr. Safian initiated an investigation into Mr. Casole's use of 44 hours of sick leave to care for his elderly ailing mother.

      b.      On March 4, 2003, Mr. Safian criticized Mr. Casole's work during a conference call with Mr. Casole and several headquarters and field personnel.

      c.      On March 24, 2003, Mr. Safian issued a memo admonishing Mr. Casole for his conduct at meetings on March 4, and 5, 2003.

      d.      On June 17, and June 30, 2003, Mr. Safian questioned Mr. Casole's supervisors about his location while he was out of the office on approved leave.

      e.      On August 7, 2003, Mr. Bossler advised Mr. Casole to forward a labeling dispute to another department to avoid giving Mr. Safian an issue to use against him.

      f.      On November 5, 2003, Mr. Safian required Mr. Casole to ask two Program Managers to alter their annual leave requests despite Mr. Casole's recommendation that the matter be left alone.

      g.      Mr. Van Blargen detailed Mr. Casole to Omaha, Nebraska from February 17, 2004, until March 12, 2004.

      h.      On April 23, 2004, Mr. Safian sent Mr. Casole and e-mail admonishing him for not completing work on an expedited hearing request before taking scheduled leave on April 22, 2004, despite Mr.Safian's prior agreement that this work would be completed on April 23, and 24, 2004.

      i.      On April 23, 2004, Mr. Safian entered Mr. Casole's office and angrily asked for a case file.  After Mr. Casole returned the file Mr. Safian said "I'll give it to someone who wants to work."

      j.      Since April, 2004, Mr. Safian's harassment has prevented Mr. Casole from being able to serve as acting Program Manager for his unit.

      k.      LERD proposed to suspend Mr. Casole by letter dated July 7, 2004.

   l. Mr. Casole was non-selected for two positions, on November 26, 2002 and March 5, 2004; received a letter of reprimand dated June 26, 2003; and was suspended from September 20, 2004 through September 24, 2004.

 26. No other FSIS employee without prior EEO activity has been subjected to these levels of criticism, scrutiny, investigation, and harassment.

 27. As a direct result of these actions, Mr. Casole suffered the damages as described in paragraph 19 of this complaint.

## COUNT THREE

### REPRISAL IN VIOLATION OF TITLE VII
### (Non Selection Deputy Director)

 28. Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 27, above.

 29. Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his past EEO activity when, on March 5, 2004, he was not selected for the position of Deputy Director, for Compliance and Investigations Divsion (CID), GS-1801-14.

 30. Mr. Casole was the best qualified candidate, however, the Agency arbitrarily selected Mr. Martin Hickman for the position.

 31. As a direct result of these actions, Mr. Casole suffered the damages as described in paragraph 19 of this complaint.

## COUNT FOUR

### REPRISAL IN VIOLATION OF TITLE VII

**(Suspension)**

32.     Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 31, above.

33.     Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his past EEO activity when, on August 27, 2004, FSIS, LERD suspended him for five (5) workdays, from September 20, through September 24, 2004.

34.     Similarly situated employees without prior EEO activity were not so treated.

35.     As a direct result of these actions, Mr. Casole suffered the damages as described in ¶19 of this complaint.

**COUNT FIVE**

**REPRISAL IN VIOLATION OF TITLE VII**
**(Reprimand)**

36.     Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 35, above.

37.     Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his past EEO activity when, on June 26, 2003, Marcella Castillo, FSIS, LERD issued an official letter of reprimand dated June 26, 2003, to Mr. Casole.

38.     No other similarly situated employee without prior EEO activity has been so reprimanded.

39.     As a direct result of these actions, Mr. Casole suffered the damages as described in ¶19 of this complaint.

15

## COUNT SIX

### DISCRIMINATION IN VIOLATION OF TITLE VII
### (Suspension based on National Origin)

40. Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 39, above.

41. Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully discriminated against him in violation of Title VII based on national origin when, on by letter dated August 27, 2004, Marcella Castillo, FSIS, LERD suspended him for five (5) days in part for kissing another employee on the cheek.

42. No other similarly situated non-Italian employee has been so reprimanded. The Agency in so suspending Mr. Casole for this behavior ignored that kissing someone on the cheek is an Italian custom.

43. As a direct result of these actions, Mr. Casole suffered the damages as described in ¶19 of this complaint.

## COUNT SEVEN

### REPRISAL IN VIOLATION OF TITLE VII
### (Detail to Omaha, Nebraska)

44. Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 43, above.

45. Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his past EEO activity when Mr. Van Blargen detailed Mr. Casole to Omaha, Nebraska from February 17, 2004 until March 12, 2004.

46. No other similarly situated employee without prior EEO activity has been detailed

in this manner.

  47. As a direct result of these actions, Mr. Casole suffered the damages as described in ¶19 of this complaint.

  WHEREFORE, Plaintiff Eugene Casole, respectfully requests that this Court:

A. Enter a declaratory judgment that Defendant's actions were taken against him in retaliation for his protected EEO activity, and because of his national origin;

B. Order that Defendant pay Mr. Casole an appropriate sum of money that will compensate him for his pain and suffering and for other non-pecuniary losses that it caused by retaliating and discriminating against him, up to three hundred thousand dollars ($300,000);

C. Order that Defendant pay all of Mr. Casole's expenses of litigation, including reasonable attorney's fees and costs for this action, including such attorney's fees and costs that he incurred in the processing and litigating of the administrative complaints filed in this matter.

D. Placement of Mr. Casole in the same or similar position(s) that he was unlawfully denied selection for, retroactive in pay and benefits to the date of his non-selection;

E. Rescission and purging from all Agency records of all letters of warning and caution and proposed disciplinary actions, and disciplinary actions, including the letter of reprimand of June 26, 2003; the letter regarding his conduct dated March 24, 2003; the Notice of Proposed Suspension dated July 7, 2004; the Decision on the Proposed Suspension letter dated August 27, 2004; and his suspension from September 20, 2004, through September 24, 2004, and that he be paid any lost wages and benefits due to this suspension;

F. Any other relief that it deems just and proper.

## Jury Demand

  The Plaintiff respectfully requests a jury trial on all matters raised herein.

Respectfully submitted,


By: _____
Steven Silverberg
D.C. Bar No. 377376
Attorney for Plaintiff
1819 L Street NW
Suite 700
Washington, DC 20036
Tel: 202-785-8499
Fax: 202-785-8470
E-mail: sjsilverberg@erols.com