## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EUGENE CASOLE**<br>**2983 Friends Road**<br>**Annapolis, Maryland  21401**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**MIKE JOHANNS, Secretary,**<br>**United States Department of Agriculture**<br>**1400 Independence Avenue, SW**<br>**Washington, DC  20250**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)  **Case No. 1:05CV01459 (CKK)**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### FIRST AMENDED COMPLAINT
### FOR EMPLOYMENT DISCRIMINATION
### (Reprisal, National Origin, and Sex)

#### Nature of the Claim

1.     Plaintiff, Eugene Casole, respectfully submits this First Amended Complaint for

Employment Discrimination.  This First Amended Complaint, as was Mr. Casole's original

Complaint for Employment Discrimination, is based on reprisal for prior Equal Employment

Opportunity (EEO) activity and national origin discrimination in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as amended by the Equal Employment

Opportunity Act of 1972, 42 U.S.C. §2000e-16, and as amended by the Civil Rights Act of 1991,

42 U.S.C. §1981a (hereinafter collectively referred to as "Title VII").   Complainant filed his

original Complaint for Employment Discrimination with this Court on July 25, 2005.  Plaintiff is

now filing this First Amended Complaint to make certain corrections and additions to his

original Complaint and to include formal administrative complaint Agency Case No. FSIS-2005-

050336 (formerly Case No. 050336) in this civil action, and also to add "sex" as a basis for

discrimination pursuant to Title VII.  Agency Case No. FSIS-2005-050336 was not ripe to file as

a civil action when the original Complaint was filed in this Court on July 25, 2005, as pursuant

to 29 C.F.R. § 1614.40.407(b), 180 days had not yet passed since Mr. Casole filed Agency Case

No. FSIS-2005-050336.  Now more than 180 days have passed and the U.S. Department of

Agriculture has not taken a final action on this case, and the case is ripe to file.

## Jurisdiction and Venue

2.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f) and

16(c), and 28 U.S.C. §§1331 and 1343(a).

3.     Venue properly lies in this judicial district pursuant to 28 U.S.C. 1391(b) because

all of the actions complained of herein took place in the District of Columbia within the

jurisdiction of the United States Court for the District of Columbia and the Defendant is located

in that judicial district.

## Parties

4.     Plaintiff Eugene Casole is a white male citizen of the United States of Italian

national origin, and is a current employee of the United States Department of Agriculture

(hereinafter "USDA" or "Agency").

5.     Defendant Mike Johanns is the Secretary of Agriculture and head of the USDA.

USDA is an agency of the United States government within the meaning of 42 U.S.C. §2000e-

16(a).  As the Secretary of Agriculture, Defendant is responsible for the employment practices

and procedures within USDA, and is named in his official capacity, pursuant to 42 U.S.C.

§2000e-16(c).

### Procedural History

6.    Plaintiff has exhausted his administrative remedies:

a.    On or about February 24, 2003 he filed a formal complaint of discrimination (Agency Case No. 030295) on the basis of reprisal for prior EEO activity.  By letter dated April 23, 2003, the Agency accepted the complaint's issue for investigation.  Mr. Casole timely requested a hearing and the case was assigned to Administrative Judge Richard W. Furcolo of the Equal Employment Opportunity Commission's (EEOC) Washington Field Office.  On August 5, 2004, the Agency moved for Findings and Conclusions of Law Without a Hearing to which Mr. Casole filed an Opposition on August 27, 2005.  On September 29, 2004, Judge Furcolo issued a decision finding no discrimination by adopting the Agency's analysis.  On November 30, 3004 the Agency adopted Judge Furcolo's decision.  Mr. Casole timely appealed Judge Furcolo's decision to the EEOC Office of Federal Operations (OFO).  By decision dated April 26, 2005, EEOC OFO affirmed Judge Furcolo's decision in Appeal No. 0A51407.  Mr. Casole filed this civil action regarding Agency Case No. 030295 on July 25, 2005 within 90 days of receipt of OFO's decision pursuant to 29 C.F.R. §1614.407(c).

b.    On or about November 25, 2003, Mr Casole filed a formal complaint of discrimination (Agency Case No. 040128, later renumbered by the Agency as FSIS-2003-00128), on the basis of reprisal for prior EEO activity.  By letter dated March 1, 2004 the Agency accepted the issue for investigation.  Mr. Casole timely requested a hearing and the case was assigned to Administrative Judge Gladys O. Collazo of the EEOC's Washington Field Office.  On October 27, 2004, Mr. Casole withdrew his request for a hearing and requested that the case be remanded back to the Agency for it to issue a final decision.  Judge Collazo

3

dismissed the case the next day (October 28, 2004), and referred the matter back to the Agency for a final decision. The Agency had not issued a decision when Mr. Casole filed this civil action on July 25, 2005 regarding Agency Case No. 040128. He filed this civil action regarding Agency Case No. 040128 pursuant to 29 C.F.R. §1614.407(b), as more than 180 days had passed since he filed his formal administrative complaint and the Agency had not taken a final action on his case. (The Agency did later issue a Final Agency Decision dated December 12, 2005 finding no discrimination, and had renumbered the case FSIS-2003-00128).

c.   On or about April 26, 2004 Mr. Casole filed a formal complaint of discrimination (Agency Case No. 040397) on the basis of reprisal for prior EEO activity. On or about June 3, 2004 he filed another complaint of discrimination (Agency Case No. 040468), also on the basis of reprisal. By letters dated June 5, 2004, and July 7, 2004 the Agency accepted the complaints for investigation of four issues, and consolidated the two complaints for investigation and processing. Mr. Casole timely requested a hearing and the case was assigned to Administrative Judge Gerald Goldstein of the EEOC's Washington Field Office. On June 2, 2005, Mr Casole withdrew his request for a hearing and requested the case be remanded back to the Agency for it to issue a final decision. The Agency never issued a decision. Mr. Casole filed this civil action regarding Agency Case Nos. 040397 and 040468 on July 25, 2005 pursuant to 29 C.F.R. §1614.407(b), as more than 180 days had passed since he filed his formal administrative complaint and the Agency had not taken a final action on this case.

d.   On or about January 5, 2005 Mr. Casole filed a formal complaint of discrimination (Agency Case No. 050222) on the basis of reprisal for prior EEO activity and sex discrimination. No investigation nor any type of decision has yet been issued in this case. Mr. Casole filed this civil action regarding Agency Case No. 050222 on July 25, 2005 pursuant to 29

4

C.F.R. §1614.407(b), as more than 180 days had passed since he filed his formal administrative complaint and the Agency had not taken a final action on this case.

e.    On or about May 4, 2005, Mr. Casole filed a formal complaint of discrimination [Agency Case No. FSIS-2005-050336 (formerly Agency Case No. 050336)] on the basis of reprisal for prior EEO activity. The Agency issued its Report of Investigation on January 4, 2006, which Attorney for Plaintiff received no earlier than January 12, 2006. Mr. Casole is now filing this civil action regarding Agency Case No. FSIS-2005-050336 pursuant to 29 C.F.R. §1614.407(b) as more than 180 days have passed since he filed his formal administrative complaint and the Agency has not taken a final action on this case.

### Factual Allegations

7.    At all times relevant to this complaint, Mr. Casole was a Compliance Specialist, GS-13, Office of Program Evaluation and Enforcement and Review (OPEER), Evaluation and Enforcement Division (EED), Food Safety and Inspection Service (FSIS), United States Department of Agriculture (USDA), Washington, D.C.

8.    Mr. Casole has been employed by USDA, FSIS, since September 26, 1986, and has been in his current position since 1995.

9.    At all times relevant to this complaint, Mr. Casole's first-line supervisor was Wayne N. Bossler, Program Manager, OPEER. Mr. Casole's second, third, and fourth-line supervisors were Scott Safian, Richard Van Blargan, and Ronald Hicks, respectively.

10.    At all times relevant to this complaint, Marcella Castillo was an investigator with FSIS Labor and Employee Relations Division (LERD). Ms. Castillo's first line supervisor was Kristie Kelm, Branch Chief, LERD.

11.     Mr. Casole's Prior EEO Activity

a..     On February, 13, 1997 Mr. Casole was falsely accused of sexually

harassing an FSIS employee. FSIS suspended him for five days without due process as

discipline for the alleged harassment, so, on or about August 7, 1997, Mr. Casole filed a formal

complaint of employment discrimination against FSIS based on sex (male) (Agency Case No.

FSIS-970741). Mr. Casole and FSIS later entered into a settlement agreement, which resolved

the case.

12.     Retaliation by Non-Selection (Supervisory Compliance Officer) (Agency Case
        No. 030295)

a.     On November 26, 2002, Mr. Casole was not selected for a GS-1801-14

Supervisory Compliance Officer (Program Manager) position in the FSIS criminal/civil branch

for which he had applied. Instead, the selecting official, Scott Safian, selected David Lavers and

David Langley to fill this position.

b.     The selection process consisted of written applications and a Behavioral

Event Interview (BEI) administered by a panel which reported to Mr. Safian. Mr. Safian

reviewed the written applications, the BEI report, and consulted with Mr. Van Blargan and Mr.

Hicks in making his selection.

c.     At the time of his non-selection Mr. Casole had over eight years of

experience reviewing and processing civil and criminal complaints. He had reviewed over 200

civil, criminal, and administrative cases and had been assigned to numerous complex cases. He

had been appointed acting program manager for the civil and criminal branches of OPEER on

numerous occasions. He had also consistently received strong performance reviews and cash

performance awards. He was clearly more qualified for the position than the selectees.

d.     Mr. Safian created a biased selection process.  He assigned arbitrary numerical values to elements of candidates written applications, thereby exaggerating the selectee's qualifications. Mr. Safian also appointed friends of Mr. Lavers' to the BEI panel. These persons exaggerated  Mr. Lavers' qualifications in order to justify his selection.

13.     Retaliation by Reprimand (Agency Case No. FSIS-2003-00128, formerly 040128)

a.     The Agency issued an official letter of reprimand to Mr. Casole dated June 26, 2003, which Mr. Casole did not receive until July 16, 2003.  The reprimand alleged that Mr. Casole had made remarks which could have been perceived to be inappropriate during a meeting between FSIS officials and representatives of Salem Packing Company Inc., of Salem, New Jersey.  Marcelle Castillo, FSIS, LERD, was the deciding official in this incident.  Mr. Casole named both Ms. Castillo and Kristie Kelm, Branch Chief, LERD, as discriminating officials.

b.     The Agency did not properly investigate the alleged incident before issuing the letter of reprimand.  Mr. Bossler conducted the investigation at Mr. Safian's direction.  USDA's personnel department was not involved.  Mr. Safian instructed Mr. Bossler not to interview Mr. Casole about the alleged remarks.

c.     Witnesses to Mr. Casole's remarks who reported that Mr. Casole's remarks were not offensive were ignored by Agency decision makers.  Significantly, the letter of reprimand did not state that anyone had actually been offended.  The reprimand was based solely on an Agency manager's belief that the remarks were offensive.

14.     Retaliation by Non-Selection (Deputy Director)  (Agency Case No. 040397)

a.     On March 5, 2004, the Agency did not select Mr. Casole for the position of GS-1801-14, Deputy Director in the FSIS Compliance and Investigation Division (CID).

Instead, Mr. Martin Hickman was selected for the position. Mr. Zygmunt Sala, Director, CID, was the selecting official.

        b.      At the time of his non-selection Mr. Casole had worked for FSIS for 18 years and had worked specifically for EED for 9 years.

        c.      The selection process for the Deputy Director's position was arbitrary, biased and irregular. No interviews were conducted and no selection panel was convened. No one from USDA human resources advised Mr. Sala in this selection. Instead, Mr. Sala devised his own system for evaluating candidates. Mr. Sala rated each candidate in nine (9) different areas of expertise. These nine areas were not qualifications contained in the job announcement. The nine areas were arbitrarily created by Mr. Sala to justify his decision.

        d.      Mr. Sala's selection process also ignored FSIS personnel directives requiring the consideration of candidates performance appraisals and merit pay.

        e.      At the time of his selection, Mr. Hickman had been disciplined for sexual harassment. Other employees at FSIS were surprised that Mr. Hickman had been selected.

        f.      Mr. Sala made his selection only with the concurrence of Mr. Hicks and Mr. Blargan. Mr. Blargan admitted during the Agency's investigation that he and Mr. Sala had discussed Mr. Hickman's selection. Mr. Blargan and Mr. Sala specifically discussed whether and how Mr. Sala had evaluated the candidates qualifications.

     15.     <u>Retaliatory Detail to Omaha, Nebraska (Agency Case No. 040397)</u>

        a.      On February 11, 2004, Mr. Van Blargen detailed Mr. Casole to the FSIS Technical Service Center (TSC) in Omaha, Nebraska from February 17, 2004, until March 12, 2004. Mr. Van Blargen did this because the Agency had initiated an investigation into whether Mr. Casole "reportedly engaged in improper conduct by making unsolicited, inappropriate, and

8

unsubstantiated remarks to another OPEER employee while on duty." FSIS began the
investigation of these allegations on February 23, 2004.

      b.      The TSC in Ohama provided no substantive work for Mr. Casole, even
though Mr. Casole had been led to believe by Mr. Van Blargan that his (Mr. Casole's) specific
expertise in reviewing state inspection programs was needed at the TSC. However, when Mr.
Casole arrived in Omaha, he was told that this work had been completed the previous summer.
In Omaha Mr. Casole was assigned "busy work" reviewing state meat processing regulations,
management protocols, and company self-assessments. This work could have been performed
by lower-level USDA employees already assigned to Omaha. Don Smart, the Director of the
Omaha TSC, did not know why Mr. Casole had been detailed to the TSC, so clearly the detail
had nothing to do with the work actually being performed at the TSC or Mr. Casole's expertise.

      c.      Senior management at FSIS ordered this detail in order to punish Mr.
Casole for his prior EEO activity. Mr. Safian demonstrated his bias when questioned about the
detail by saying "I finally got him (Casole)." To the best of Mr. Casole's knowledge, no other
employee had ever been sent on a similar detail due to a pending investigation.

      d.      The detail was also unnecessarily difficult for Mr. Casole because of his
personal situation. Under normal circumstances Mr. Casole travels each weekend to care for his
elderly ailing mother in Philadelphia. His detail to Omaha prevented Mr. Casole from
continuing to travel to help his mother. Mr. Van Blargen was aware of these facts. Mr. Van
Blargen could have avoided these difficulties had he chosen to detail Mr. Casole to other offices
in Washington, D.C., or in the surrounding states. However, Mr. Van Blargen chose to send Mr.
Casole halfway across the United States, at great monetary cost to the Agency and personal cost
to Mr. Casole.

16.    <u>Increasingly Hostile Work Environment (Agency Case No. 040468)</u>

a.    Early in the week of April 22, 2004, Mr. Casole received information that the Albany District Office of FSIS had shut down a firm in Fall River, Massachusetts, and that the plant owner had requested an expedited hearing. The file was scheduled to arrive at Mr. Casole's office on April 21 or 22, 2004. USDA Headquarters received the file from Albany late in the day on April 22, 2004.

b.    Mr. Safian and Mr. Casole had discussed Mr. Casole's role in processing the expedited hearing request. They agreed that Mr. Casole would draft several letters and forward the request to FSIS Office of General Counsel on April 23, or 24, 2004.

c.    On April 22, 2004, Mr. Casole requested and Mr. Safian approved two (2) hours of annual leave for Mr. Casole, from 2:30 pm to 4:30 pm, that day. Mr. Casole began work on the expedited hearing request on April 22, 2004, but was unable to complete this task before he left for the day because the file had not yet arrived from Albany.

d.    On April 23, 2004, Mr. Casole received an e-mail from Mr. Safian admonishing him for not completing his work on the expedited hearing request before taking his scheduled leave on April 22. Mr. Safian later entered Mr. Casole's office and angrily asked for the Albany case file. After Mr. Casole returned the file Mr. Safian said "I'll give it to someone who wants to work."

e.    Since April, 2004, Mr. Casole felt forced to decline to serve as acting Program Manager for his unit because of these and other negative encounters with Mr. Safian, which had created a hostile work environment for Mr. Casole. Mr. Bossler had told Mr. Casole that his refusal to serve as Acting Program Manager had adversely affected his performance

10

ratings and evaluations.  Acting for the Program Manger is an element of Mr. Casole's performance standards.

17.    Other Hostile Environment  Work Incidents (Agency No. 040468)

a..    Mr. Safian has created a hostile work environment by subjecting Mr. Casole to numerous other incidents of retaliation and harassment.  In December 2002, Mr. Safian initiated an investigation into Mr. Casole's use of 44 hours of sick leave to care for his ailing mother.

b.    The investigation was completely unwarranted.  USDA policy allows employees to take up to 480 hours of sick leave each year to care for family members.  Mr. Safian was aware of the reasons for Mr. Casole's leave and his mother's illness because Mr. Casole had taken extended sick leave to care for his mother since Mr. Safian had become his supervisor.

c.    Other incidents have only increased Mr. Casole's levels of fear and uncertainty, and have created a hostile work environment.  On March 4, 2003, Mr. Safian criticized Mr. Casole's work during a conference call with Mr. Casole and several headquarters and field personnel.  On March 24, 2003, Mr. Safian issued an unwarranted memo admonishing Mr. Casole for his conduct at meetings on March 4, and 5, 2003.  On June 17, and June 30, 2003, Mr. Safian questioned Mr. Casole's supervisors about his whereabouts.  On those dates Mr. Casole was out of the office on approved leave.  On August 7, 2003, Mr. Bossler advised Mr. Casole to forward a labeling dispute to another department to avoid giving Mr. Safian an issue to use against him.  On November 5, 2003, Mr. Safian required Mr. Casole to ask two Program Managers to alter their annual leave requests despite Mr. Casole recommendation that the matter be left alone.

18.    Reprisal and Discrimination Based on Sex and Natural Origin Based on
Proposed Suspension and Suspension (Agency Case No. 050222)

a.    By letter dated July 7, 2004, FSIS, LERD proposed to suspend Mr. Casole for

five (5) days. The proposed suspension stated that Mr. Casole, on January 27, 2004, had

allegedly called a female employee, Ms. Vella Holmes, a "vamp" and that he had later returned

to her office with a dictionary in order to read her the definition of the word. The letter also

stated that Mr. Casole had, on January 29, 2004, after apologizing to Ms. Holmes for the January

27 incident, leaned over and kissed her on the cheek. Mr. Casole had kissed her on the cheek as

part of his apology to her. Ms. Holmes initially accepted the apology. On August 27, 2004,

LERD issued a letter suspending Mr. Casole for five (5) workdays, for five work days from

September 20, 2004, through September 24, 2004.

b.    LERD officials did not conduct a complete impartial investigation of the

January 27 or January 29, 2004, incidents. The investigator ignored significant inconsistencies

in alleged witnesses statements. LERD officials ignored Ms. Holmes's stated desire to allow

Mr. Casole's comments to pass with an apology. The investigation and suspension were

initiated entirely by LERD officials.

c.    The LERD investigator removed Mr. Casole's comments and actions from

their context. Mr. Casole and Ms. Holmes shared an informal relationship, which included jokes

and teasing. Before the "vamp" incident, Ms. Holmes had twice previously said in front of a co-

worker, Compliance Specialist Frank Busch, that what Mr. Casole wanted was a 12 year old

virgin. The LERD investigators ignored this. LERD investigators also ignored Mr. Casole's

Italian cultural heritage, which includes kissing during greetings, apologies, and other non-

sexual situations.

12

d.    LERD punished Mr. Casole more severely than other employees due to his prior EEO activity. Ms. Holmes was not punished, although she had made sexually inappropriate statements to Mr. Casole. Mr. Casole had named the investigator's direct supervisor, Kristie Kelm, in a prior complaint. In the course of the investigation of LERD's suspension Mr. Casole provided extensive evidence of misconduct on the part of other FSIS employees, however none of this evidence was investigated or considered.

19.    Further Hostile Environment [Agency Case No. FSIS-2005-050336 (formerly 050336]

a.    At a branch meeting on Wednesday, March 9, 2005, Mr. Safian gave explicit instructions to Mr. Bossler to draft a cover letter which referenced a proposed Consent Decision to plant management at Superior Processing, a firm located in Chickasha, Oklahoma that had been suspended in November 2004 because of alleged repetitive failures in its sanitation and food safety controls. Mr. Casole drafted the letter and Mr. Bossler reviewed it and cleared it for Mr. Safian's signature. This proposed Consent Decision was only a draft and had not been cleared by the Office of General Counsel (OGC). Mr. Safian knew that the proposed Consent Decision was only in draft and had not been cleared by OGC, because Messrs. Casole and Bossler had told Mr. Safian this at a branch meeting.

b.    On Friday, March 11, 2005, at approximately 11:00 a.m., Mr. Safian entered Mr. Casole's office. Mr. Safian stated that the stipulation appeared scant, and asked Mr. Casole if he had used language from other model Consent Decisions in drafting this Consent Decision for Superior Processing. He then asked Mr. Casole if the stipulation was legally acceptable. Mr. Casole explained to Mr. Safian that he (Mr. Casole) did not know if it was legally acceptable and he (Mr. Safian) should speak to someone from OGC regarding whether the stipulation was legally acceptable, as Mr. Casole is not an attorney. Mr. Safian then raised

13

his voice at Mr. Casole and asked him again if he (Mr. Casole) had used prior Consent Decisions as examples. When Mr. Casole tried to respond to Mr. Safian, Mr. Safian, again raising his voice, informed Mr. Casole that he couldn't speak unless spoken to, and that he would take the case away from Mr. Casole. He criticized Mr. Casole's work and told him to answer his questions or that he (Mr. Safian) would get Personnel to do something to him. Mr. Safian again rased his voice, stating that he needed a witness, and ran into the corridor. He was then heard yelling "get in here" to Mr. Busch, who was acting as supervisor in Mr. Bossler's absence, to come into Mr. Casole's office and witness the incident.

      c.     Mr. Safian then resumed the questioning, again asking Mr. Casole if he (Mr. Casole) thought that the stipulation language was legally acceptable. Mr. Casole explained that he thought it was acceptable, but he was not a legal specialist. This enraged Mr. Safian who again raised his voice and told Mr. Casole that he (Mr. Casole) was the legal expert. Mr. Safian then asked Mr. Casole about some other work in which Mr. Casole had deferred to the Office of Field Operations (OFO) because of its expertise. This further enraged Mr. Safian and he again told Mr. Casole that he (Mr. Casole) was supposed to be the expert. Mr. Casole also advised Mr. Safian if he (Mr. Safian) wanted to change the language in the Consent Decision, he would gladly do so.

      d.     About an hour after the above incident, Mr. Safian sent an e-mail stating that the Agency was no longer to provide a proposed Consent Decision to plant management. Mr. Safian stated though that he "hoped we have a redraft (of the cover letter) that I can review and send out Monday." Mr. Casole made the appropriate revisions in the cover letter pursuant to Mr. Busch's instructions, and provided it to Messrs. Busch and Safian at about 4:15 p.m that afternoon of March 11, 2005.

e.      Approximately ten minutes later, Mr. Busch returned to Mr. Casole's office and told him that Mr. Safian was unhappy with the cover letter, that it didn't address the "parameters of the Order," and that they couldn't go home until the letter was revised. Mr. Safian gave no indication or any guidance to Messrs. Casole and Busch as to what corrections he (Mr. Casole) wanted. Mr. Safian stated that he wanted additional stipulations, but when asked what kind of stipulation(s) he wanted, he couldn't say, stating that the staff officers were the experts and had to develop the provisions. Mr. Casole reminded Mr. Safian that he (Mr. Safian) had sent an e-mail earlier that afternoon that the cover letter would be completed the following Monday. Finally, when Mr. Casole reminded Mr. Safian that his (Mr. Casole's) mother was seriously ill and that he had to be in Philadelphia that evening, Mr. Safian changed his mind and told Mr. Casole that he could go home.

f.      Mr. Casole found the whole day's interactions with Mr. Safian to be quite harassing. Mr. Casole notes that this March 11, 2005 incident with Mr. Safian happened after the Agency had recently shared excerpts of an EEO Report of Investigation with him in which Mr. Casole charged Mr. Safian and other FSIS officials with retaliation.

20.     As a direct result of the Agency's actions Mr. Casole has suffered physical, emotional and economic damages, including but not limited to: emotional pain and suffering; anxiety; depression; stress; aggravation; and humiliation; and loss of past, present and future income, including loss of pay and benefits.

## COUNT ONE

### REPRISAL IN VIOLATION OF TITLE VII
### (Non-Selection, Supervisory Compliance Officer)

21.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 20, above.

22.    Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his prior EEO activity when, on November 26, 2002, he was not selected for the position of Supervisory Compliance Officer (Program Manager), GS-1801-14.

23.    Mr. Casole was the best qualified candidate.  However, the Agency manipulated the process to select other candidates.

24.    As a direct result of these actions, Mr. Casole suffered the damages as described in ¶20 of this complaint.

## COUNT TWO

### REPRISAL IN VIOLATION OF TITLE VII
### (Hostile Environment)

25.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 24, above.

26.    The Agency willfully, intentionally, maliciously and unlawfully retaliated against Mr. Casole because of his prior EEO activity when its managers took the following actions; among other actions:

a.    In December 2002, Mr. Safian initiated an investigation into Mr. Casole's use of 44 hours of sick leave to care for his elderly ailing mother.

16

b.      On March 4, 2003, Mr. Safian criticized Mr. Casole's work during a conference call with Mr. Casole and several headquarters and field personnel.

c.      On March 24, 2003, Mr. Safian issued a memo admonishing Mr. Casole for his conduct at meetings on March 4, and 5, 2003.

d.      On June 17, and June 30, 2003, Mr. Safian questioned Mr. Casole's supervisors about his location while he was out of the office on approved leave.

e.      On August 7, 2003, Mr. Bossler advised Mr. Casole to forward a labeling dispute to another department to avoid giving Mr. Safian an issue to use against him.

f.      On November 5, 2003, Mr. Safian required Mr. Casole to ask two Program Managers to alter their annual leave requests despite Mr. Casole's recommendation that the matter be left alone.

g.      Mr. Van Blargen detailed Mr. Casole to Omaha, Nebraska from February 17, 2004, until March 12, 2004.

h.      On April 23, 2004, Mr. Safian sent Mr. Casole an e-mail admonishing him for not completing work on an expedited hearing request before taking scheduled leave on April 22, 2004, despite Mr. Safian's prior agreement that this work would be completed on April 23, and 24, 2004.

i.      On April 23, 2004, Mr. Safian entered Mr. Casole's office and angrily asked for a case file. After Mr. Casole returned the file Mr. Safian said "I'll give it to someone who wants to work."

j.      Since April, 2004, Mr. Safian's harassment has prevented Mr. Casole from being able to serve as acting Program Manager for his unit.

k.      LERD proposed to suspend Mr. Casole by letter dated July 7, 2004.

17

l.    Mr. Casole was non-selected for two positions, on November 26, 2002 and March 5, 2004; received a letter of reprimand dated June 26, 2003; and was suspended from September 20, 2004 through September 24, 2004.

m.    On March 11, 2005, Mr. Safian entered Mr. Casole's office and yelled at him regarding a cover letter regarding a Consent Decision, criticized Mr. Casole's work product, threatened to take Mr. Casole's assignment away, told Mr. Casole that he couldn't speak until spoken to, threatened to take personnel action against him, failed to provide Mr. Casole with proper guidance as to the corrections that he (Mr. Safian) wanted, and threatened to not let Mr. Casole leave the office until the work product was correct.

27.    No other FSIS employee without prior EEO activity has been subjected to these levels of criticism, scrutiny, investigation, and harassment.

28.    As a direct result of these actions, Mr. Casole suffered the damages as described in paragraph 20 of this complaint.

### COUNT THREE

### REPRISAL IN VIOLATION OF TITLE VII
### (Non Selection, Deputy Director)

29.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 28, above.

30.    Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his prior EEO activity when, on March 5, 2004, he was not selected for the position of Deputy Director, for Compliance and Investigations Divsion (CID), GS-1801-14.

31.    Mr. Casole was the best qualified candidate, however, the Agency arbitrarily selected Mr. Martin Hickman for the position.

32.    As a direct result of these actions, Mr. Casole suffered the damages as described in paragraph 20 of this complaint.

## COUNT FOUR

### REPRISAL IN VIOLATION OF TITLE VII
### (Reprimand)

33.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 32, above.

34.    Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his prior EEO activity when, on June 26, 2003, Marcelle Castillo, FSIS, LERD issued an official letter of reprimand dated June 26, 2003, to Mr. Casole.

35.    No other similarly situated employee without prior EEO activity has been so reprimanded.

36.    As a direct result of these actions, Mr. Casole suffered the damages as described in ¶20 of this complaint.

## COUNT FIVE

### REPRISAL IN VIOLATION OF TITLE VII
### (Suspension)

37.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 36, above.

38.    Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his prior EEO activity when, on August 27, 2004, Kristie Kelm, FSIS, LERD, suspended him for five (5) workdays, from September 20, through September 24, 2004.

39.    Similarly situated employees without prior EEO activity were not so treated.

40.    As a direct result of these actions, Mr. Casole suffered the damages as described in ¶20 of this complaint.

## COUNT SIX

### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII
### (Suspension based on National Origin)

41.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 40, above.

42.    Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully discriminated against him in violation of Title VII based on national origin when, by letter dated August 27, 2004, Kristie Kelm, FSIS, LERD, suspended him for five (5) days in part for kissing another employee on the cheek.

43.    No other similarly situated non-Italian employee has been so suspended for this type of behavior.  The Agency in so suspending Mr. Casole for this behavior ignored that kissing someone on the cheek is an Italian custom.

44.    As a direct result of these actions, Mr. Casole suffered the damages as described in ¶20 of this complaint.

20

## COUNT SEVEN

## SEX DISCRIMINATION IN VIOLATION OF TITLE VII
### (Suspension based on Sex)

45.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 44, above.

46.    Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully discriminated against him in violation of Title VII based on sex when, by letter dated August 27, 2004, Kristie Kelm, FSIS, LERD, suspended him for five (5) days in part for allegedly calling a female co-worker, Vella Holmes, a "vamp".  However, the Agency ignored the fact that Ms. Holmes had previously spoken to Mr. Casole in inappropriate sexual terms and had twice said to Mr. Casole in front of a co-worker was that what he wanted was a 12 year old virgin.

47.    No other similarly situated female employee has been so suspended for this type of behavior allegedly committed by Mr. Casole.

48.    As a direct result of these actions, Mr. Casole suffered the damages as described in ¶20 of this complaint.

## COUNT EIGHT

## REPRISAL IN VIOLATION OF TITLE VII
### (Detail to Omaha, Nebraska)

49.    Mr. Casole adopts and incorporates by reference all of the allegations contained in paragraphs 1 through 48, above.

50.    Mr. Casole alleges that the Agency willfully, intentionally, maliciously and unlawfully retaliated against him because of his prior EEO activity when Mr. Van Blargen

detailed Mr. Casole to Omaha, Nebraska from February 17, 2004 until March 12, 2004.

51.    No other similarly situated employee without prior EEO activity has been detailed in this manner.

52.    As a direct result of these actions, Mr. Casole suffered the damages as described in ¶20 of this complaint.

WHEREFORE, Plaintiff Eugene Casole, respectfully requests that this Court:

A.    Enter a declaratory judgment that Defendant's actions were taken against him in retaliation for his prior EEO activity, and that specifically the suspension was taken against him in retaliation for his prior EEO activity and also because of his national origin and sex;

B    Order that Defendant pay Mr. Casole an appropriate sum of money that will compensate him for his pain and suffering and for other non-pecuniary losses that it caused by retaliating and discriminating against him, up to three hundred thousand dollars ($300,000);

C.    Order that Defendant pay all of Mr. Casole's expenses of litigation, including reasonable attorney's fees and costs for this action, including such attorney's fees and costs that he incurred in the processing and litigating of the administrative complaints that he filed in this matter.

D.    Order placement of Mr. Casole in the same or similar position(s) that he was unlawfully denied selection for, retroactive in pay and benefits to the date of his non-selection(s);

E.    Order rescission and purging from all Agency records all negative references and actions regarding Mr. Casole, including but not limited to all letters of warning and caution and proposed disciplinary actions, and disciplinary actions, including the letter of reprimand of June

26, 2003; the letter regarding his conduct dated March 24, 2003; the Notice of Proposed

Suspension dated July 7, 2004; the Decision on the Proposed Suspension letter dated August 27,

2004; and his suspension from September 20, 2004, through September 24, 2004, and that he be

paid any lost wages and benefits due to this suspension;

  F.  Order that Defendant pay Mr. Casole any consequential damages as to any career

opportunities and pay increases that he lost due to the Agency retaliating and discriminating

against him.

  G.  Order any other relief that it deems just and proper.

**Jury Demand**

  The Plaintiff respectfully requests a jury trial on all matters raised herein.

          Respectfully submitted,

February 8, 2006

          Steven J. Silverberg
          D.C. Bar No. 377376
          1819 L Street NW
          Suite 700
          Washington, DC  20036
          Tel: 202-785-8499
          Fax: 202-785-8470
          E-mail: sjsilverberg@erols.com

          ***Attorney for Plaintiff***