# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EUGENE CASOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1459 (CKK)** |
| | ) | |
| **MIKE JOHANNS,** | ) | |
| **Secretary of the United States** | ) | |
| **Department of Agriculture,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S THIRD AMENDED COMPLAINT
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

The Plaintiff, Eugene Casole, by and through his attorney, Steven J. Silverberg, hereby submits his Opposition to Defendant's Motion for to Dismiss or in the Alternative, for Summary Judgment, his Memorandum Of Points And Authorities In Support Of Plaintiff's Opposition To Defendant's Motion To Dismiss Plaintiff's Third Amended Complaint, or In The Alternative, For Summary Judgment, his Statement of Material Facts at Issue and a proposed Order.

Respectfully submitted,

   /s/  Steven J. Silverberg
Steven J. Silverberg
District of Columbia Bar #377376
Attorney for Plaintiff
1819 L Street, N.W., Suite 700
Washington, D.C. 20036
Tel: (202) 785-8499
Fax: (202) 785-8470
E-mail: sjsilverberg@erols.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EUGENE CASOLE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 05-1459 (CKK)** |
| | ) | |
| **MIKE JOHANNS,** | ) | |
| **Secretary of the United States** | ) | |
| **Department of Agriculture,** | ) | |
| | ) | |
| **Defendant** | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF  PLAINTIFF'S OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS
### PLAINTIFF'S THIRD AMENDED COMPLAINT
### OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff Eugene Casole ("Plaintiff"), by and through his attorney, Steven J. Silverberg,

hereby submits his opposition to the Defendant's Motion to Dismiss Plaintiff's Third Amended

Complaint or, in the Alternative, for Summary Judgment ("Def. Motion" or "Motion").

## 1.      FACTUAL BACKGROUND

Plaintiff Eugene Casole was at all times relevant to this Complaint an employee of the

U.S. Department of Agriculture ("USDA," "Agency," or "Defendant"), Food Safety and

Inspection Service ("FSIS") and remains a current employee. In 1997 Mr. Casole was accused of

sexually harassing a FSIS employee.  FSIS suspended him for five days without due process as

discipline for the alleged harassment, and on or about August 7, 1997, Mr. Casole filed a formal

complaint of employment discrimination against FSIS based on sex. Mr. Casole and FSIS later

entered into a settlement agreement, which resolved the case.  Third Amended Complaint ¶

11(a).[1]  Plaintiff proffers that evidence to be produced as a result of discovery in this matter will show the knowledge of and/or involvement of one or more of the individuals named in the instant complaint in Plaintiff's 1997 complaint.

At all times relevant to his complaint, Mr. Casole's first-line supervisor was Wayne N. Bossler, Program Manager, Office of Program Evaluation and Enforcement and Review ("OPEER").  His second, third and fourth line supervisors were Scott Safian, Richard Van Blargan, and Ronald Hicks, respectively.  Third Amended Complaint, ¶ 9.

Subsequent to the 1997 complaint and settlement, Mr. Casole has suffered a number of acts that he alleges are the result of discriminatory and/or retaliatory motives on the part of the Agency and/or its employees. These have also resulted in formal complaints of discrimination by Mr. Casole being filed at the following times:  (a) in February 2003 (Agency Case No. 030295); (b) in November 2003 (Agency Case 040128, later renumbered by the Agency as FSIS-2003-00128); (c) in April 2004 (Agency Case No. 040397); (d), in June 2004 (Agency Case No. 040468); (e) in January 2005 (Agency Case No. 050222); (f) in May 2005, (Agency Case No. FSIS-2005-050336); (g) in September 2005 (Agency Case No. 00945); (h) in December 2005, (Agency Case No.FSIS-2006-0013),[2] and (I) in March 2006 (Agency Case No. FSIS-2006-

---

[1]  Please note that Plaintiff has verified under penalty of perjury that the facts alleged in his Third Amended Complaint are true to the best of his knowledge and belief.  *See* Plaintiff's ("Pl.") Exhibit ("Ex.") A ("Verification of Third Amended Complaint").  Plaintiff relies on the Factual Allegations set forth in the Third Amended Complaint to support many of the facts set forth in his Opposition, as discovery has not yet been conducted and he does not have various materials at this point that he expects to receive in discovery that will further support the facts in this Opposition.  Plaintiff strongly asserts that Defendant's Motion for Summary Judgment is premature as it was filed before discovery has been conducted.  *See* Argument, Section IV(B) of this Opposition.

[2]  This case was incorrectly numbered FSIS-2006-0431 in the Third Amended Complaint in ¶6(g), but was correctly numbered FSIS-2006-00131 in ¶ 21 of the Third Amended Complaint.

00322).  Third Amended Complaint, ¶ 6(a)-(h). The acts complained of include, but are not limited to:

> The non-selection for two positions: 1) a GS-14 Supervisory Compliance Officer and 2) GS-14 Deputy Director, Compliance and Investigations Division. Third Amended Complaint, ¶¶ 12, 14, Counts I, III.
>
> Receiving a written reprimand. Third Amended Complaint ¶¶ 13, Count IV.
>
> Being assigned a detail to a distant location.  Third Amended Complaint, ¶ 15, Count VIII.
>
> Receiving a proposed suspension and a suspension of five days. Third Amended Complaint ¶ 18, Counts V, VI, and VII.
>
> Being subjected to a hostile work environment that began during 2002 and has continued through the filing of the instant complaint. Third Amended Complaint ¶¶ 15, 16, 17, 19, 20, 21, 22, Count II.
>
> The denial of a detail/re-assignment. Third Amended Complaint ¶¶ 22, Count II.

A.     **Non-Selection for  Supervisory Compliance Officer Position**

On November 26, 2002, Mr. Casole was not selected for a GS-1801-14 Supervisory Compliance Officer (Program Manager) position in the FSIS criminal/civil branch for which he had applied.[3]  Instead, the selecting official, Scott Safian, selected David Lavers and David Langley to fill this position. The selection process consisted of written applications and a Behavioral Event Interview (BEI) administered by a panel which reported to Mr. Safian, who reviewed the written applications, the BEI report, and consulted with Mr. Van Blargan and Mr. Hicks in making his selection. Third Amended Complaint ¶¶ 12(a)-(b).

At the time of his non-selection Mr. Casole had over eight years of experience reviewing and processing civil and criminal complaints.  He had reviewed over 200 civil, criminal, and

---

[3]  Note that Defendant does not address this non-selection (Supervisory Compliance Officer) at all in its Statement of Material Facts Not in Dispute.

administrative cases and had been assigned to numerous complex cases.  He had been appointed acting program manager for the civil and criminal branches of the Office of Program Evaluation and Enforcement and Review on numerous occasions.  He had also consistently received strong performance reviews and cash performance awards. He was clearly more qualified for the position than the selectees.  Third Amended Complaint ¶ 12(c)

Plaintiff alleges that Mr. Safian created a biased selection process based in all or in part on the prohibited motive of retaliation in order to deny Plaintiff this position. Safian assigned arbitrary numerical values to elements of candidates written applications, thereby exaggerating the selectee's qualifications. Mr. Safian also appointed friends of Mr. Lavers' to the BEI panel. These persons exaggerated Mr. Lavers' qualifications in order to justify his selection. Third Amended Complaint ¶ 12(d)

### B.    Non-Selection for Deputy Director, Compliance and Investigations Division

On March 5, 2004, the Agency did not select Mr. Casole for the position of GS 1801-14, Deputy Director in the FSIS Compliance and Investigation Division.  Instead, Mr. Martin Hickman was selected for the position. Mr. Zygmunt Sala, Director, CID, was the selecting official. At the time of his non-selection, Mr. Casole had worked for FSIS for 18 years and had worked specifically for the Evaluation and Enforcement Division ("EED") for 9 years. Defendant ("Def.") Exhibit ("Ex.") 11, Declaration of Zygmunt Sala.  Third Amended Complaint, ¶¶ 14(a)-(b).

Plaintiff alleges that the selection process for the Deputy Director's position was arbitrary, biased and irregular and that the selection process was manipulated, in all or in part,

based on a retaliatory motive in order to deny Plaintiff this position.  Evidence of this

manipulation includes, but is not limited to the following: [Def. Ex. 11 (Sala Declaration), Third

Amended Complaint ¶¶ 14(a)-(f)].

> No interviews were conducted and no selection panel. was convened.
>
> No one from USDA human resources advised Mr. Sala in this selection. Instead, Mr. Sala devised his own system for evaluating candidates.
>
> Mr. Sala rated each candidate in nine (9) different areas of expertise. These nine areas were not qualifications contained in the job announcement. The nine areas were arbitrarily created by Mr. Sala to justify his decision.
>
> Mr. Sala's selection process also ignored FSIS personnel directives requiring the consideration of candidates' performance appraisals and merit pay.
>
> At the time of his selection, Mr. Hickman had been disciplined for sexual harassment. Other employees at FSIS were surprised that Mr. Hickman had. been selected..
>
> Mr. Sala made his selection only with the concurrence of Mr. Hicks and Mr. Van Blargan. Mr. Van Blargan admitted during the Agency's investigation that he and Mr. Sala had discussed Mr. Hickman's selection. Mr. Van Blargan and Mr. Sala specifically discussed whether and how Mr. Sala had evaluated the candidates' qualifications.

### C.    The Letter of Reprimand

The Agency issued an official letter of reprimand to Mr. Casole dated June 26, 2003,

which Mr. Casole did not receive until July 16, 2003.  Def. Ex. 19 (Letter of Reprimand).  The

reprimand alleged that Mr. Casole had made remarks which could have been perceived to be

inappropriate during a meeting between FSIS officials and representatives of Salem Packing

Company Inc., of Salem, New Jersey.  Witnesses to Mr. Casole's remarks who reported that Mr.

Casole's remarks were not offensive were ignored by Agency decision makers.  Pl. Ex. C

(Affidavit of Valerie Neris); Pl. Ex. D (Affidavit of Hussain Magsi); Third Amended Complaint,

¶ 13, Count IV.  The letter of reprimand did not state that anyone had actually been offended.

The reprimand was based solely on an Agency manager's belief that the remarks were offensive.

Plaintiff alleges that the Agency did not properly investigate the alleged incident before issuing

the letter of reprimand. Mr. Bossler conducted the investigation at Mr. Safian's direction.  The

Agency's personnel department was not involved.  Also, Mr. Safian instructed Mr. Bossler not to

interview Mr. Casole about the alleged remarks.  Plaintiff alleges that this letter of reprimand

was motivated in all or in part by reprisal for his prior EEO activity. Third Amended Complaint,

¶ 13.

### D.     Detail to Omaha, Nebraska

On February 11, 2004, Mr. Van Blargan detailed Mr. Casole to the FSIS Technical

Service Center (TSC) in Omaha, Nebraska from February 17, 2004, until March 12, 2004. Mr.

Van Blargan did this because the Agency had initiated an investigation into whether Mr. Casole

"reportedly engaged in improper conduct by making unsolicited, inappropriate, and

unsubstantiated remarks to another OPEER employee while on duty." On February 23, 2004,

after Plaintiff had started his detail, the FSIS began the investigation of these allegations. Third

Amended Complaint, ¶ 15(a)

The TSC in Omaha provided no substantive work for Mr. Casole, even though Mr.

Casole had been led to believe by Mr. Van Blargan that Mr. Casole's specific expertise in

reviewing state inspection programs was needed at the TSC. However, when Mr. Casole arrived

in Omaha, he was told that this work had been completed the previous summer. In Omaha Mr.

Casole was assigned "busy work" reviewing state meat processing regulations, management

protocols, and company self-assessments. This work could have been performed by lower level

USDA employees already assigned to Omaha.  Third Amended Complaint, ¶ 15(b).  Don Smart,

the Director of the Omaha TSC, did not know why Mr. Casole had been detailed to the TSC.  Pl.

Ex. E (Affidavit of Donald Smart). Plaintiff alleges that the detail had nothing to do with the work actually being performed at the TSC, the needs of the Agency or Mr. Casole's expertise. Third Amended Complaint, ¶ 15(b)

Plaintiff alleges that the Agency ordered this detail, in all or in part, in order to punish him for his prior EEO activity. Mr. Safian demonstrated his retaliatory motive when questioned about the detail by saying "I finally got him [Casole]." To the best of Mr. Casole's knowledge, no other employee had ever been sent on a similar detail due to a pending investigation. Third Amended Complaint, ¶ 15(c)

The detail was also unnecessarily difficult for Mr. Casole because of his personal situation. Under normal circumstances Mr. Casole traveled each weekend to care for his elderly ailing mother in Philadelphia. His detail to Omaha prevented Mr. Casole from continuing to travel to help his mother. Mr. Van Blargan was aware of these facts. Mr. Van Blargan could have avoided these difficulties had he chosen to detail Mr. Casole to other offices in Washington, D.C., or in the surrounding area. However, Mr. Van Blargan chose to send Mr. Casole to Omaha, at great monetary cost to the Agency and personal burden and stress to Mr. Casole. Third Amended Complaint, ¶ 15(d)

### E. The Five Day Suspension

By letter dated July 7, 2004, FSIS, Labor and Employee Relations Division ("LERD") proposed to suspend Mr. Casole for five (5) days. The proposed suspension stated that Mr. Casole, on January 27, 2004, had allegedly called a female employee, Ms. Vella Holmes, a "vamp." The letter also stated that Mr. Casole had, on January 29, 2004, after apologizing to Ms. Holmes for the January 27 incident, leaned over and kissed her on the cheek. Mr. Casole had kissed her on the cheek as part of his apology to her. Ms. Holmes initially accepted the apology.

Def. Ex. 3 (July 7, 2004 Proposed Suspension Letter); Third Amended Complaint, ¶ 18(a).  On

August 27, 2004, LERD issued a letter suspending Mr. Casole for five (5) workdays, from

September 20, 2004, through September 24, 2004.  Def. Ex. 5 (August 30, 2004 Letter from

Kristie Kelm, Chief, LERD, to Eugene Casole).[4]  Third Amended Complaint, ¶ 18(a).

LERD officials did not conduct a complete impartial investigation of the January 27 or

January 29, 2004 incidents.  The investigator ignored significant inconsistencies in alleged

witnesses statements. LERD officials ignored Ms. Holmes's stated desire to allow Mr. Casole's

comments to pass with an apology.  Def. Ex. 2 (Declaration of Vella Kay Holmes), p. 3; Third

Amended Complaint ¶ 18(b).  The investigation and suspension were initiated entirely by LERD

officials. Third Amended Complaint, ¶ 18(b)

The LERD investigator removed Mr. Casole's comments and actions from their context.

Mr. Casole and Ms. Holmes shared an informal relationship, which included jokes and teasing.

The LERD investigators also ignored Mr. Casole's Italian cultural heritage, which includes

kissing during greetings, apologies, and other nonsexual situations. Third Amended Complaint, ¶

18(c).  Plaintiff alleges that the Agency's acts were motivated, in all or in part, by the prohibited

motives of reprisal, sex and/or national origin. Third Amended Complaint.

### F.    The Hostile Work Environment

Plaintiff alleges that he has been subjected to a hostile work environment based on

retaliation for his EEO activity beginning in about 2002 and continuing through the filing of his

---

[4]Extrinsic evidence is being cited in this section regarding Plaintiff's five day suspension only for
the purpose of refuting Defendant's Summary Judgment Motion regarding Count V of Plaintiff's
Third Amended Complaint  (suspension based on reprisal) and Count VII (suspension based on
sex), and not to refute Defendant's 12(b)(6) Motion regarding Count VII (suspension based on
national origin).  Plaintiff addresses Defendant's 12(b)(6) Motion regarding Count VI in Section
IV(A)(3) of this Opposition.

subsequent EEO complaints and the instant complaint. Plaintiff alleges that intent of this hostile environment is to punish him for his EEO activity, and to inhibit him and/or other employees from participating in or supporting EEO activities. Plaintiff provides numerous examples of this hostile environment in his Third Amended Complaint. Complaint ¶¶ 15, 16, 17, 19, 20, 21 and 22.

## II.    MATERIAL FACTS AT ISSUE

Plaintiff has submitted the attached <u>Plaintiff's Statement of Material Facts As to Which There is a Genuine Issue</u>, which is incorporated herein by reference.

## III.    LEGAL STANDARDS

### A.    Standard for 12(b)(6) Motions

The Federal Rules of Civil Procedure erect a powerful presumption against dismissing pleadings, pursuant to Rule 12(b)(6) for failure to state a cognizable claim for relief. *Maez v. Mountain States Tel & Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir. 1995). To prevail on a Rule 12(b)(6) motion, a defendant must show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (complaint should only be dismissed if it appears beyond doubt that plaintiff cannot prove facts). It is immaterial whether plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *accord Swierkiewicz v. Sorema, N.A.* 534 U.S. 506, 511-12 (2002) [Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on its merit]. The Court must accept the plaintiff's factual allegations as true, and must draw all reasonable inferences in plaintiff's favor. *Conley*, 355 U.S. at 45-56; *Leatherman v. Tarrant*

*County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *Vanover v. Hartman*, 77 F.Supp 2d 91-98 (1999), citing *Antonelli v. Shahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). Courts construe a plaintiff's allegations liberally because the rules require only "general" or notice pleading, rather than detailed fact pleading. *Swierkiewicz*, 534 U.S. at 512; *Leatherman*, 507 U.S. at 168; *Conely* 355 U.S. at 47. In view of the Rules' motion pleading requirements, dismissals pursuant to Rule 12(b)(6) are not routinely granted. *Rather v. City of Chicago*, 929 F.2d 297 (7th Cir. 1991), *Hall v. City of Santa Barbara*, 833 F.2d 1220, 1274 (9th Cir. 1986).

It not necessary to plead all the elements of a *prima facie* case in Plaintiff's Complaint to avoid dismissal under Rule 12(b)(6), nor to plead facts supporting the elements of a *prima facie* case:

> "[c]omplaints 'need not plead law or match facts to every element of a legal theory.' " *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (*quoting Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)); *see Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998) ("[A] plaintiff need not allege all the facts necessary to prove its claim."); *Atchinson v. District of Columbia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996) ("A complaint ... need not allege all that a plaintiff must eventually prove ...."); *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983) ("The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based.... 'Notice pleading' is sufficient.").
>
> *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000))

With specific regard to Title VII cases, the D.C. Circuit holds that:

> "In the employment discrimination context," . . ."all a complaint need state is 'I was turned down for a job because of my race.'" *Id.* (*quoting Sparrow v. United Air Lines, Inc.*, 342 U.S. App. D.C. 268, 216 F.3d 1111, 1115 (D.C. Cir. 2000)). Because [Plaintiff] made "essentially that statement in her race and age discrimination

-10-

claims," the court concluded that "it is clear that plaintiff has stated a claim for which relief can be granted under Title VII . . ." *Id.*

       *Chappell-Johnson v. Powell,* 440 F.3d 484, 487 (D.C. Cir. 2006)

## B.       Standard for Summary Judgment

Summary judgment is *only* proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986); *United States v. Diabold, Inc.*, 369 U.S. 654 (1962). The trial court may grant summary judgment only if there is no significant probative evidence to support the complaint. *Shields v. E.I. Lilly and Co.*, 895 F.2d 1463 (D.C. Cir. 1990).

In order to prevail on a motion for summary judgment, the moving party must clearly show undisputed or irrefutable facts entitling it to judgment as a matter of law. *See Sartor v. Arkansas Gas Corporation*, 321 U.S. 620 (1944); *Smith v. Nixon*, 606 F.2d 1183, 1187 (D.C. Cir. 1979). Summary judgment is an "extreme remedy," in which facts, not allegations, are the touchstone, and any doubts must be resolved against the moving party. *See Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-159 (1970); *Cram v. Sun Insurance Office, Limited*, 375 F.2d 670, 673-674 (4th Cir. 1967; *United States v. General Motors Corporation*, 65 F.R.D. 115, 119 (D.D.C. 1974). To defeat a summary judgment motion, the opposing party need not prove that the factual assertions of the moving party are actually incorrect, only that contrary

-11-

inferences "might be permissible." *General Motors Corporation*, *supra*, 65 F.R.D. at 119.

Cases presenting issues of motivation, intent and good faith are peculiarly not susceptible to resolution by summary judgment. "Care is required in deciding whether the evidence presents a genuine issue of motive, for summary judgment is seldom appropriate in cases wherein particular state of mind are decisive as elements of [a] claim or legal defense." *Ross v. COMSAT*, 759 F.2d 355, 364 (4th Cir. 1985). When the validity of a complaint turns on questions of an employer's motive and intent, a court must be especially cautious in granting summary judgment. *See Morrison v. Nissan Co. Ltd.,* 601 F.2d 139, 141 (4th Cir. 1979)*; see also e.g., Hackley v. Roudebush*, 520 F.2d 108, 157-8 (D.C. Cir. 1975) (The existence of material issues of fact concerning motivation preclude summary judgment); *Indiana Farm Bureau Co-Operate Association, Inc. v. Chicago Regional Port District*, 552 F. Supp. 270 (N.D. Ill. 1982); *Shoemaker v. Allender*, 520 F. Supp. 266 (E.D. Pa. 1982); *Miller v. Saxbe*, 403 F.Supp 1314, 1316 (D.D.C. 1975 As stated in *Ross v. COMSAT*, 759 F.2d at 364, a Title VII case that overturned a summary judgment in favor of COMSAT:

> [t]he nonmoving party is in favorable posture, being entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories involved by the evidence as considered.

To warrant summary judgment, the record "should show the right of the [movant] to judgment with such clarity as to leave no room for controversy and . . . should show affirmatively that the [adverse party] would not be entitled to [prevail] under discernible circumstances." *Weiss v. Kay Jewelry Stores*, 470 F.2d 1259 (D.C. Cir. 1972), *citing Traylor v.*

-12-

*Black, Sivalls & Byrson, Inc.*, 189 F.2d 213, 216 (8th Cir. 1950). Summary judgment in discrimination cases must be approached with special caution and the court "must be extra-careful to view all the evidence in the light most favorable" to plaintiff. *Ross v. Runyon*, 859 F. Supp. 15, 21-22 (D.D.C. 1994); *see also Hayes v. Shalala*, 902 F. Supp. 259, 260 (D.D.C. 1995).

When ruling on a motion for summary judgment, the court may not weigh or resolve issues of fact. *Empire Electronics v. United States*, 311 F.2d 175, 179, (2nd Cir. 1962). One of the strongest restatements of this principle is found in *Leonard v. BHJK Corporation*, 469 F.2d 108, 110, (D.C. Cir. 1972), where the Court observed that:

> even where one reasonably may surmise that Plaintiff is unlikely to prevail upon a trial, is not sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so insubstantial that it would obviously be futile to try them. *id*. at 110, quoting *Sprague v. Vogt*, 150 F.2d 795, 801, (8th Cir. 1945).

Summary judgment is inappropriate where there are witness credibility issues. The advisory committee's notes to the 1963 amendment to Fed. R. Civ. P. 56(e) states "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." "Indeed, when a dispute concerns the credibility of witnesses, only a trial jury, and not a judge weighing summary judgment pleadings, is able to assess the demeanor and attitude of witnesses." *Cunningham v. United Nat. Bank of Wash.*, 710 F. Supp. 861, 862 (D.D.C. 1989); *Hayes,* 902 F. Supp. at 265 (The credibility of witnesses may raise a genuine issue of fact that might determine the outcome of a case). The credibility of witnesses is key because summary judgment is not a "trial by affidavit." *Anderson, supra*, 477 U.S. at 255 (Fed. R. Civ. P. 56 "by no means authorizes trial on affidavits. Credibility determinations, the weighing of evidence and the

drawing of legitimate inference from the facts are jury functions and not those of a judge."). "[E]ven when a directed verdict would be proper after hearing the evidence, the district court should not try the case in advance by summary judgment." *Ross*, 759 F.2d at 364. Finally, when, as here, summary judgment involves more than one claim, each claim and its elements must be dissected, analyzed and decided individually. *Pafford v. Secretary of Labor*, 148 F.3d 658 (7th Cir. 1998).

### C.    Standard for Discrimination and Pretext on Summary Judgment

At trial Plaintiff must show by a preponderance of the evidence that Defendant's non-discriminatory explanations are unworthy of credence, that is, that they are a pretext. But on summary judgment the non-moving party's burden of proof of his *prima facie* case and pretext is less, as is his burden of proof generally. At summary judgment the non-movant is not required to prove his case by a preponderance of the evidence, but only to raise a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987).

To survive summary judgment in a discrimination case, the plaintiff must only show that a reasonable jury *could* conclude that discrimination was the reason for the acts complained of. "The question is: whether the jury *could* infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)" [emphasis supplied] *Waterhouse v. D.C.*, 2002 U.S. App. LEXIS 16214, 10, 298 F.3d 989 (D.C. Cir. 2002) *(citing Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 128 (D.C. Cir. 1998)); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151, (2000).

-14-

Defendant argues [Def. Motion, § I(c)] that the evidence opposing summary judgment must be "substantial and credible" (Def. Motion, p. 6) citing a number of cases in support of what appears to be a higher standard of proof at summary judgment. However, a closer reading of the cited cases reveals that the Courts are, in fact, only applying the normal summary judgment standard that the non-moving party must only present sufficient evidence such that a reasonable trier of fact *could* find for the non-moving party. The evidence presented to oppose summary judgment must only be sufficiently "substantial and credible" enough to raise a triable issue of fact. *Waterhouse*, *supra*; *Reeves, supra.*

**IV.    Argument**

**A.    Defendant's 12(b)(6) Motion: Counts I, II, and VI**

**1.    Count I: The Passage of Time Does Not Preclude
a Prima Facie Case of Retaliation**

Defendant states that "Plaintiff alleges in Count I that his November 26, 2002 non-selection for a Supervisory Compliance Officer position was the result of retaliation for his August 7, 1997 EEO complaint," citing Plaintiff's Third Amended Complaint, ¶¶ 11 & 12. Def. Motion, p. 7. Defendant's own statement of Plaintiff's claim is legally sufficient to preclude dismissal under Rule 12(b)(6). "[A]ll a complaint need state is 'I was turned down for a job because of my race.'" *Chappell-Johnson,* 440 F.3d at 487. Plaintiff's Third Amended Complaint makes such a claim, substituting "retaliation" for race. Dismissal of this Count under Rule 12(b)(6) is not proper on this basis alone. *Id.*

Defendant's argument is that this Count should properly be dismissed, <u>as a matter of law,</u> based only on the passage of time because the necessary causal link between the protected activity and the retaliatory action cannot be made. Defendant is wrong. Plaintiff may establish

-15-

the causal link by other evidence.

It is well established that to establish a prima facie case of retaliation, Plaintiff must show: (1) that he participated in prior EEO activity; (2) the Agency was aware of the EEO activity; (3) the Agency took an adverse employment action against Plaintiff; and (4) a causal connection exists between the EEO activity and the adverse action, or the adverse action followed his protected activity within such period of time that a retaliatory motive may be inferred. *Berger v. Iron Workers Reinforced Redman Local 209*, 843 F.2d 1395, 1423 (D.C. Cir. 1988) *see also e.g. Stella v. Mineta*, 284 F.3d 135, 144-45 (D.C. Cir 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) Key is the **"or"** clause in the fourth element. A plaintiff may show the causal connection by evidence other than the passage of time.

Defendant errs when it argues that as a matter of law the passage of time precludes Plaintiff from establishing his *prima facie* case of retaliation by failing to establish the necessary causal connection.  Defendant's Motion at pages 8-9 list a series of cases that it cites to support its argument that "[a]s a matter of law, there is no causation – the more than five years and three months between his prior EEO complaint and the non selection is too great to establish causation." Def. Motion, p. 8. The problem with the cases cited by Defendant to support his thesis is that these cases were deciding (or reviewing *de novo*) summary judgment motions, not 12(b)(6) motions. Rule 12(b)(6) motions and Rule 56 summary judgment motions are different and based on different legal theories. The cases cited by Defendant do not establish "maximum" time frames as a matter of law, rather, they evaluated the time frames in each case in the context of the facts of the individual cases on motions for summary judgment. Their holdings are moot to the consideration of a 12(b)(6) motion.

The fact that the protected activity here is several years old does not *preclude* a finding of retaliatory animus; proximity in time is not the only way to raise an inference of reprisal. While a time difference of less than one year *allows* an inference of a retaliatory motive, such an allowable inference *does not* mean that the passage of more than one year *precludes* establishing a causal connection or nexus between the protected activity and the retaliation.

> "It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of the employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." . . . "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected activity following the protected conduct can also give rise to the inference. *Robinson v. Southeastern Pa. Transp. Auth.* 982 F.2d 892, 895 (3rd Cir 1993). These are not the exclusive ways to show inference. *See, e.g., Waddell v. Small Tube Products,* Inc., 799 F.2d 69, 73 (3rd Cir. 1986)." *Id.*

> *Kachmar v. SunGuard Data Systems, Inc.* 109 F.3d 173, 177-78 (3rd Cir. 1997)

Causal links have been found even after, as here, the passage of years. *See, e.g., Robinson v. Southeastern Pa. Transp. Auth.* 982 F.2d 892, 895 (3rd Cir 1993) (four year gap between protected activity and EEO filing); *Candalaria v. EG&G Energy Measurements, Inc.* 33 F.3d 1259, (10th Cir. 1994); *Coates v. Dalton,* 927 F.Supp. 169, 170 (E.D. Pa. 1996); *Blanchard v. First Fed. Sav. and Loan Ass'n,* 713 F.Supp. 196, 199-200 (E.D. La. 1989). As one Court wrote:

> Evidence of a four-year time lapse between plaintiff's non-promotion and his EEO filing is not legally conclusive proof that no retaliation occurred. *Robinson v. Southeastern PA Transportation Auth., Red Arrow Div., 982 F.2d 892, 895 (3d Cir. 1993); Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991).* If it were, an employer could avoid liability for retaliation simply by waiting to

punish an employee who had engaged in protected EEO activity. Therefore, while a court may consider the existence of such a time lapse when deciding whether a retaliation case should to go to a jury, the time lapse should be only one consideration among many. *Robinson, 982 F.2d at 895.*

*Coates, supra.,* 927 F.Supp. at 170.

Defendant's argument that as a matter of law the passage of time precludes Plaintiff from making his *prima facie* case of retaliation is incorrect. While the passage of a brief period of time *allows* an inference of retaliation, the passage of a longer period of time does not preclude finding an inference of causation when there is sufficient other evidence to allow such an inference to be drawn.

Plaintiff does not claim to rely only on the "short period of time" inference of retaliation. Rather, he may establish the necessary inference of retaliation by other evidence. The cases cited by Defendant actually support Plaintiff's argument in this regard. Defendant cites *Holbrook v. Reno* [which cities and relies on *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir 1985)] to support its assertion that an adverse action must occur shortly after the protected activity to prove retaliation. An examination of *Mitchell*, however, shows that that Court properly stated the requirements for a *prima facie* case of retaliation ("a plaintiff must show: 1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two") and then explains how a plaintiff *may* establish the third element: "The causal connection component of the prima facie case **may** be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Id.* [emphasis supplied]. The unexplained transformation in Defendant's Motion of the word "may" into "must" in *Holbrook* is just that: unexplained. *Holbrook* does not represent the state of the

-18-

law in this Circuit; indeed, by its citation to *Mitchell*, it is clear that the *Holbrook* court was

intending to apply the standard as articulated in *Mitchell*, not establish a new standard. *Mitchell*

only provides one way that a plaintiff may establish the necessary inference of causation, not the

only way.

      Defendant also cites, and relies on a quote from, the unreported case *Saunders v.*

*DiMario*, 1998 WL 525798 at *5 (D.D.C. 1998), *aff'd*,194 F.3d 175 (D.C. Cir 1999). This case,

like the others cited, is a summary judgment ruling and is after Plaintiff had conducted

discovery. *Id* at *5.  The quote cited by Defendant was: "The greater the time that elapses

between the protected activity and the alleged acts of retaliation . . . the more difficult it is to

demonstrate any causal connection and, **absent any other evidence**, where the gap is

sufficiently great it is appropriate to grant judgment for the defendant as a matter of law."

[emphasis supplied].  Def. Motion, p. 9.  This quote actually states Plaintiff's argument: that it is

permissible to find causation even after a long period of time if there is other evidence of

causation. The *Saunders* Court also stated "Mr. Saunders cannot claim that the GPO failed to

hire him "shortly after" his alleged EEO activity **and, without more**, he has failed to

demonstrate the causal link necessary to establish the third element of a prima facie retaliation

claim." *Id* at *6 [emphasis supplied] It is the "without more" that causes Defendant's 12(b)(6)

Motion to fail here.  Plaintiff is not required to prove, much less even plead, all elements of his

*prima facie* case in his Complaint and is <u>entitled</u> to discovery to obtain the evidence necessary to

make his case. *Chappell-Johnson v. Powell,* 440 F.3d 484, 487 (D.C. Cir. 2006); *Sparrow v.*

*United Air Lines*, 216 F.3d 1111, 1114-15, 1117 (D.C. Cir. 2000).

      In fact this Court holds that "the time lapse between a plaintiff's participation in the

-19-

protected activity and an employer's adverse action, and what raises an inference of reprisal, depends on the particular situation." *Hastie v. Henderson*, 121 F.Supp.2d. 72, 80, (D.D.C. 2000), *citing*, *Batson v. Powell, 912 F. Supp. 565, 577 n.15 (D.D.C. 1996); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992)*. Because the causal link "depends on the particular situation" it is dependant on the facts of the case and thus is not proper for a 12(b)(6) motion.

As it is *possible* for Plaintiff to establish the necessary causal link between the protected activity and the retaliatory acts on the basis of facts other than a mere inference drawn from a brief passage of time, dismissal of Count I under Rule 12(b)(6) is improper. *Conley*, 355 U.S. at 45-46; *Hughes*, 449 U.S. at 10; *Scheuer,* 416 U.S. at 236; *Swierkiewicz*, 534 U.S. at 511-12 (2002)

In order to survive a motion to dismiss, all the plaintiff has to say is 'the Government retaliated against me because I engaged in protected activity." *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir 2006). Because Plaintiff made the statement that he was turned down for the position because of his protected EEO activity, Defendant's motion must be denied. *Id.*; *Chappell-Johnson, at* 440 F.3d at 487; *Sparrow*, 216 F.3d at 115.

### 2.    Count II: Plaintiff Stated a Proper Hostile Environment Claim

Defendant argues in Section III of its Motion that the events complained of fail to rise to the level necessary to create a hostile environment.  However, Defendant misunderstands and misstates the level of harm required when examining claims of *retaliation*.  In the context of reprisal cases, the Supreme Court has recently made its clear that the conduct need only be material enough to dissuade a reasonable employee from filing or supporting a discrimination complaint.  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded

-20-

a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*

*Northern v. White*, 2006 U.S. LEXIS 4895, *26-*27; 126 S. Ct. 2405 (2006) *citing Rochon*, 438

F.3d at 1219 (*quoting Washington*, 420 F.3d at 662).  This has been the standard in this Circuit.

*Rochon,  Id*.

      Defendant in its Motion to Dismiss Count II argues that a hostile environment must be

"severe," "pervasive" and "abusive" and cites numerous cases in support of its arguments.  Def.

Mot., pp. 10-11.  However, Defendant fails to account for (or mention) *Burlington Northern v.*

*White*, which clarified the standard required to show retaliation, and only cites cases prior to this

decision.  Nor does Defendant acknowledge this Circuit's own holding that cases of retaliation

have a different standard of objective harm than "discrimination" cases. *Rochon, Id*.  The

arguments presented by Defendant have been mooted by this Circuit's and the Supreme Court's

holdings in *Rochon* and *Burlington Northern*.

      The Supreme Court in *Burlington Northern* provides convincing arguments why it is that

cases involving retaliation are subject to their own standard of harm, distinct from the standard

of harm required in discrimination non-retaliation cases, and holds that: "the anti-retaliation

provision, unlike the substantive provision, is not limited to discriminatory actions that affect the

terms and conditions of employment." *Burlington Northern, 2006 U.S. LEXIS 4895 at *20.*  It is

thus clear that in cases of hostile environment based on retaliation, the level of harm is not

Defendant's "severe/pervasive/abusive" standard but simply is whether the acts to which

Plaintiff was subjected were sufficient that they "well might have 'dissuaded a reasonable

worker from making or supporting a charge of discrimination.'" *Burlington Northern v. White*,

2006 U.S. LEXIS 4895,*26-*27.  Defendant has set forth the wrong standard of harm for

retaliation cases.

      The Supreme Court holds in hostile environment cases that *it is the total environment*

-21-

and cumulative effect on the individual that is the violation, not individual discreet acts: [t]he "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. … Such claims are based on the cumulative affect of individual acts." *National Railroad Passenger Corporation, v. Morgan,* 2002 LEXIS 4214,*28; 122 S. Ct. 2061 (2002). *See also Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).[5]

Plaintiff asserts that when viewed in the totality of the circumstances, the entire series of events to which he was subjected do state a claim as to whether Defendant's actions created a hostile environment such that a reasonable employee could be dissuaded from making or supporting a charge of discrimination Complaint after seeing the hostile environment to which Plaintiff was subjected. *Burlington Northern, supra.* Therefore, Plaintiff's Count II properly states a claim.

Plaintiff is only required in his Third Amended Complaint to provide notice of his claim, not to present all of his evidence of the hostile environment to which he was subjected and the cumulative effect on him. As a hostile environment based on retaliation is a claim for which relief is available under Title VII, Plaintiff is only required to so state in his Complaint was that he was subjected to a hostile environment on account of retaliation. Plaintiff has done so and

---

[5]  Defendant argues in its Motion at p. 14 that Plaintiff cannot include "discreet employment" actions which "stand-alone" as part of a hostile environment claim.  Plaintiff does not agree that such discrete acts cannot be part of a hostile environment claim.  Clearly such acts contribute to a hostile environment.  It makes no sense not to count such discrete acts as part of a hostile environment because they are too severe.  Also, *Burlington Northern* makes clear that in retaliation cases, Plaintiff does not have to show that the retaliatory act was even severe, only that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Burlington Northern, supra, Rochon, supa.*

Defendant's 12(b)(6) Motion must be denied. *Chappell-Johnson,* 440 F.3d at 487; *Rochon,* 438 F.3d at 1220 (in order to survive a motion to dismiss, all the plaintiff has to say is the 'Government retaliated against me because I engaged in protected activity').

### 3.    Count VI: Plaintiff's National Origin Claim is Proper

Defendant argues that "he [Plaintiff] never exhausted a national origin discrimination claim." Def. Motion, p. 15.  Count VI relates to the formal complaint made by Plaintiff under Agency Case Number 050222 ("Complaint 050222").  Third Amended Complaint, ¶ 6(d) Plaintiff was denied an opportunity to have any of his claims regarding Complaint 050222 "exhausted" because the Defendant failed to investigate the complaint as required pursuant to 29 C.F.R. § 16143.108(e), within 180 days of the date of the filing of the formal administrative complaint of discrimination.  Third Amended Complaint, ¶ 6(d).  As stated in ¶ 6(d) "[n]o investigation nor any type of decision has yet been issued in this case."[6]

Defendant argues that the EEO administrative procedures are "mandatory," and sets forth several cases stating that a party must timely exhaust his/her administrative remedies and be sufficiently specific in his administrative complaint before bringing the claims to court. However, Defendant is in error here because these requirements only apply to the *substance* of the claim, *i.e.* one cannot bring to court an entirely new claim or a claim not previously raised in the administrative process whose facts are not "like or related" to a claim that had been raised in the administrative complaint.  Defendant does not realize that these amendment procedures do not apply to the *bases* alleged in a complaint.  The EEOC has long held that a complainant may allege discrimination on all applicable bases, including sex, race, national origin, color, religion,

---

[6]  A Report of Investigation for Agency Case Number 050222 was eventually issued *after* Plaintiff filed 050222 as part of this civil action.

age, disability and reprisal, and may amend his or her complaint at any time to add or delete bases without changing the identity of the claim. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970); *Hoffman v. U.S. Postal Service*, EEOC Appeal No. 01984127 (May 24, 2001); *Whitacre v. Department of the Navy*, EEOC Appeal No. 01995803 (April 3, 2001); and *Dragos v. U.S. Postal Service*, EEOC Request No. 05940563 (January 19, 1995).

Further, the EEOC regards the charging party's failure to allege the proper bases of discrimination as placing an incorrect legal conclusion on the factual allegations of the complaint, and as such, the failure is a technical defect and is not grounds for disallowing the amendment. *See Burt v. Department of Air Force*, EEOC No. 01831457 (1983).

Thus, Plaintiff is not raising a new claim here as his national origin claim relates to the five day suspension, which clearly was a factual allegation that he had set forth in the administrative complaint regarding other claims of discrimination; *i.e.*, reprisal and sex. Plaintiff is only raising a new basis, not a new or different incident.

Note the irony that Defendant asserts the "mandatory"nature of the administrative process when it is Defendant that failed to investigate Complaint Number 050222 within the required 180 days. Defendant cannot new assert that Plaintiff is barred for allegedly not following administrative procedures from raising a new basis in his civil action when Defendant itself did not follow the proper administrative procedures in Complaint Number 050222.

**B.    Summary Judgment Counts: Counts III, IV, V, VII and VIII**

**1.    Required Discovery Precludes Summary Judgment**

No discovery in this matter has yet occurred as Defendant has not filed an answer (as it filed instead its Motion to Dismiss/Summary Judgment) and thus no scheduling order as to discovery or any other matter has been entered into by this Court. Plaintiff, however, requires

discovery in this matter as to all claims in his Third Amended Complaint in order to properly oppose Defendant's summary judgment motion.[7] *See* Exhibit B, Rule 56(f) affidavit. Federal Rule of Civil Procedure 56(f), provides that:

> Should it appear from the affidvits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This Circuit holds that: "[l]itigants are entitled to discovery before being put to their proof." *Sparrow v. United Air Lines*, 216 F.3d 1111, 1117, (D.C. Cir 2000) *quoting Bennett v. Schmidt,* 153 F.3d at 519. [emphasis supplied]; *see also e.g. Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997). (Summary judgment ordinarily is proper only after the plaintiff has been given adequate time for discovery).

There has been no discovery in this matter and Plaintiff requires discovery to gather the necessary evidence to firmly establish his case of discrimination as to each of the counts in his Amended Complaint and to establish that the non-discriminatory explanation(s) proffered by Defendant are pretext. Such evidence (*e.g.* of pretext) is required both to fully raise a triable issue of fact in order to overcome any potential further motion for summary judgment (*see* § III(C) above) and to sustain his burden of proof at trial. For example, evidence of pretext when combined with plaintiff's *prima facie* case is sufficient to allow a jury to make a finding of discrimination. *Reeves,* 530 U.S. at 147, 120 S.Ct. at 2109, (a plaintiff's prima facie case

---

[7]    Plaintiff is addressing Counts III, IV, V, and VIII in this section because those are the counts in Plaintiff's Third Amended Complaint for which Defendant requests summary judgment. Thus, Plaintiff needs discovery for these counts to refute Defendant's allegations that no genuine issue of material facts exist in these Counts.   Plaintiff will also require Discovery on Counts I, II, and VI should this Court deny Defendant's rule 12(b)(6) Motion regarding these three counts.

combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated).

Plaintiff's need for discovery is not a mere "fishing expedition" in which he hopes to find evidence to support "unsubstantiated" allegations. There is already at least some evidence in Plaintiff's possession that helps substantiate all or part of Plaintiff's allegations that Defendant was, and is, motivated by discriminatory/retaliatory animus against Plaintiff. For example, Teri Gaudreau, a co-worker of Plaintiff, states in her affidavit (Pl. Ex. F, p. 5), attached) "I believe Scott [Safian] has subjected Complainant to harassment because of Complainant's prior EEO activity. Scott has had it in for Complainant because of the complaints he has filed against Scott" and "I have not seen Scott treat anybody as badly as he treats Complainant." *See also* Third Amended Complaint, ¶ 19(f). Furthermore, regarding the letter of reprimand issued to Complainant, Plaintiff has affidavits from two witnesses (Pl. Ex. C (Affidavit of Valerie Neris), and Pl. Ex. D (Affidavit of Hussain Magsi), that state that Plaintiff did not make unprofessional and/or inappropriate comments to representatives of Salem Packing Company, and an affidavit from Mr. Wayne Bossler (Exhibit H) that states that he was told not to interview Plaintiff about the allegations regarding his (Plaintiff) making inappropriate comments; yet, Plaintiff was still inexplicably reprimanded for his alleged unprofessional and/or inappropriate comments. Third Amended Complaint ¶¶ 13(a)-(c), Count IV. Plaintiff is entitled to conduct discovery to obtain other evidence supporting these and his other allegations.

Summary Judgment must be denied because Plaintiff requires and is entitled to conduct discovery in this matter. *Sparrow v. United Air Lines*, 216 F.3d at 1117 The following paragraphs further describe the necessity of discovery on Counts III, IV, V, VII and VIII.

-26-

## 2.    Discovery is Required Regarding Count III

Count III relates to Plaintiff's non-selection for the position of Deputy Director, FSIS

Compliance and Investigation Division. Defendant does not dispute Plaintiff's *prima facie* case.

Instead, it asks the Court to accept its non-discriminatory explanation without Plaintiff having

the opportunity to conduct discovery to gather the required evidence to refute it.

Plaintiff alleges that, in addition to his being better qualified for the position than the

selectee, there were a number of irregularities in the selection process, described in the Third

Amended Complaint ¶¶ 14(a-f). Irregularities in the selection process and/or the hiring of a less

qualified individual may raise an inference of a discriminatory motive or pretext. *See e.g.,*

*Krodel v. Young*, 242 U.S. App. D.C. 11, 748 F.2d 701, 709 (D.C. Cir. 1984) (employer's failure

to follow own procedures probative of discrimination*), cert. denied*, 474 U.S. 817, 88 L. Ed. 2d

51, 106 S. Ct. 62 (1985); *Johnson v. Lehman*, 220 U.S. App. D.C. 100, 679 F.2d 918, 922 (D.C.

Cir. 1982) (same); *Harding v. Gray*, 9 F.3d 150, 153-54 (D.C. Cir. 1993), (hiring a less qualified

person can support an inference of discriminatory motive).

In addition, Plaintiff alleges that the Defendant's non-discriminatory explanation(s) rest

largely on the credibility of the officials involved in the selection process, specifically that of

Zygmunt Sala, Director, CID (the selecting official) and that of Mr. Ronald Hicks (Plaintiff's

fourth line supervisor) and Mr. Richard Van Blargan (Plaintiff's third line supervisor).  Mr. Sala

made his selection only with the concurrence of Mr. Hicks and Mr. Van Blargan).  Third

Amended Complaint, ¶ 14(f), yet Plaintiff has not had the opportunity to depose any of these

individuals nor other witnesses and requires such an opportunity as part of his discovery in this

matter. Summary judgment itself is inappropriate where there are witness credibility issues.

Advisory Committee Note to Fed. R. Civ. P. 56(e) ("Where an issue as to a material fact cannot

be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.") *Cunningham,* 710 F. Supp. at 862  ("when a dispute concerns the credibility of witnesses, only a trial jury, and not a judge weighing summary judgment pleadings, is able to assess the demeanor and attitude of witnesses."); *Hayes,* 902 F. Supp. at 265 (The credibility of witnesses may raise a genuine issue of fact that might determine the outcome of a case).

**3.    Discovery is Required Regarding Count IV**

Third Amended Complaint Count IV relates to the letter of reprimand for alleged inappropriate remarks that Plaintiff made to representatives of Salem Packing Company, dated June 26, 2003, received by Plaintiff on July 16, 2003.  Plaintiff alleges the letter of reprimand was retaliation against him on the basis of his prior protected EEO activity. Third Amended Complaint. ¶¶ 13(a)-(c).

Defendant argues that Summary Judgment is warranted on the basis of the affidavits of Agency witnesses Charles Geraci and Marcelle Castillo and based on their affidavits (Exhibits 16, 17 and 18 to Defendant's Statement of Material Facts at Issue, p. 8).  Plaintiff has not had the opportunity to conduct discovery, either via interrogatories, document requests and/or deposition of these individuals to obtain evidence to challenge their statements or their credibility. Fed. R. Civ. P. 56(e); *Cunningham,* 710 F. Supp. 861, 862 (D.D.C. 1989); *Hayes,* 902 F. Supp. at 265.

For the Court to grant summary judgment on the basis of these statements, without Plaintiff being permitted to conduct the discovery necessary to gather the evidence to challenge the statements would be improper.  Plaintiff requires, and is entitled to conduct discovery regarding these witnesses. *Sparrow v. United Air Lines,* 216 F.3d at 1117.

-28-

**4.    Discovery is Required Regarding Count V and Count VII**

Third Amended Complaint Counts V and VII relate to Plaintiff's administrative complaint, Agency Case Number 050222.  Both Counts relate to a suspension received by Plaintiff after an incident wherein a fellow employee, Vella Holmes, complained of Plaintiff's alleged inappropriate words and actions towards her.  Plaintiff alleges here that his suspension was motivated, in all or in part, by prohibited motives, specifically reprisal (Count V) and/or sex (Count VII).

Plaintiff requires discovery regarding these two Counts to refute Defendant's Motion for Summary Judgment.  Specifically, Plaintiff requires discovery into the decision process of those individuals deciding on the suspension, their prior knowledge of his EEO activity, their motivation(s), the credibility of their testimony, and a comparison of the treatment of Plaintiff when compared to that of other similarly situated individuals in the Agency.  Plaintiff also wants to be able to conduct further discovery regarding Ms. Holmes, as she has stated that she had accepted Plaintiff's apology and wanted to let the incident pass without filing a complaint.  Def. Ex. 2 , pp. 3; 4 (Holmes Declaration).  Plaintiff  needs to find out whether management officials influenced Holmes based on prohibited motives to file a complaint against him (Ms. Holmes acknowledged that she gave the complaint to Mr. Safian after she had spoken to him earlier that day).  *Id.*, p. 4.  Defendant, in its Motion, has stated its non-discriminatory explanation for its action. Defendant is asking this Court to accept its alleged non-discriminatory explanation at face value without allowing Plaintiff discovery to gather evidence to refute it. Plaintiff requires discovery to gather evidence to show that the Defendant's explanation is a pretext for discrimination. Pl. Ex. B, Rule 56(f) affidavit. Therefore, summary judgment must be denied.

5.    **Discovery is Required Regarding Count VIII**[8]

Count VIII relates to an out of town detail to which Plaintiff was subjected, and the motivation for the detail itself and the location of the detail.  As is the situation regarding Plaintiff's suspension, this count involves issues of Plaintiff's treatment when compared to other similarly situated employees, the motives of the decision makers and the credibility of Defendant's witnesses, in particular Mr. Richard Van Blargan and Mr. Scott Safian. As pled in the Third Amended Complaint, ¶¶ 15(a-d), the detail appeared to be of no use as there was no substantive work for Plaintiff and cost Defendant a great deal of funds. The detail was also unnecessarily difficult for Plaintiff because he traveled every weekend to care for his elderly ailing mother in Philadelphia.  Other, less costly alternatives may have been available to Defendant, alternatives that also would have been more compatible with Plaintiff's personal situation and yet satisfied whatever legitimate motives the Defendant may have had in wishing to remove Plaintiff from the vicinity of the employee complaining of his act(s). Discovery is required on the true motives and credibility of the decision makers on this detail, the veracity of their stated reasons for their act and if lower cost and less disruptive alternative assignments were available and if they were, why Defendant chose to subject Plaintiff to a more costly and personally disruptive alternative; such evidence might be probative of a prohibited motive and/or pretext on the part of Defendant.

---

[8]   Defendant's Motion, p. 28, incorrectly identifies this Count, relating to the February 17 –March 12, 2004 detail to Omaha Nebraska as "Count VII." This is incorrect, as it is in fact Count VIII in Plaintiff's Third Amended Complaint. Plaintiff assumes this incorrect reference to be a typographic error in Defendant's Motion.

### 6.    Plaintiff Requires Discovery Regarding Mixed Motive Discrimination

Plaintiff may establish his claim of discrimination by presenting sufficient evidence that despite the existence of legitimate, nondiscriminatory reasons for the adverse employment action, a prohibited motive was *also* a motivating factor in the decision (the "mixed-motive" theory of discrimination). 42 U.S.C. § 2000e-2(m); *Desert Palace, Inc., v. Costa, 2003 U.S. LEXIS 4422,\*; \*22, 539 U.S. 90;123 S. Ct. 2148;156 L. Ed. 2d 84*. Under the "mixed motive" method of proof, a plaintiff may establish a claim of disparate treatment if he can demonstrate that, although the Agency's decision may have been based upon legitimate, nondiscriminatory reasons, it was also at least in part motivated by a prohibited motive on the part of a relevant decision-maker. "[A] plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Desert Palace, 2003 U.S. LEXIS 4422* at *22 (internal quotation marks omitted).

It follows that on a summary judgment motion, plaintiff must *only* raise a triable issue of fact regarding the mixed motive theory, that is, that a reasonable factfinder *could* find that the Agency was motivated in part by a prohibited motive.  Plaintiff here requires discovery to obtain such evidence. As noted earlier, at least one co-worker, Teri Gaudreau, has testified that she believes that Plaintiff was subjected to harassment in retaliation for his prior EEO activity and that no one was treated as badly as Pl. Ex. F (Gaudreau Affidavit).  Discovery is required to obtain additional evidence of discrimination/retaliation against Plaintiff. Even if he cannot obtain sufficient evidence that there was a "but for" level of causation for the events complained of, he is entitled to limited relief if the evidence shows that prohibited motives were at least in part, a

motivating factor. Such a showing will still entitle him to relief. 42 U.S.C. 2000e-2(m).

("Impermissible consideration of race, color, religion, sex, or national origin in employment

practices."); *Desert Palace, supra,*

It should be noted that the "mixed motive" theory also applies to reprisal/retaliation

claims, not just discrimination claims. *Thomas v. Nat'l Football League Players Ass'n*, 131 F.3d

198, 202-203 (D.C. Cir. 1997); *Kubicko v. Ogden Logistics Services*, 1999 U.S. App. LEXIS

11731,*21 n.8; (4th  Cir. 1999); *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549-551 (10th  Cir.

1999); *Tanca v. Nordberg*, 98 F.3d 680, 685 (1st Cir. 1996), *cert. denied*, 520 U.S. 1119 (1997);

*Miller v. CIGNA Corp.*, 47 F.3d 586, 596 n.8 (3rd Cir. 1995)' *Cosgrove v. Sears, Roebuck & Co.*,

9 F.3d 1033, 1039-41 (2nd Cir. 1993).

At this stage of the case, Plaintiff is not required to characterize his case as "pretext" or

"mixed motive." The Judge makes this determination after evaluating the evidence and proceeds

accordingly. *See e.g., Fuller v. Phipps,* 67 F.3d 1137, 1142 n.2; *see also Price Waterhouse v.

Hopkins*, 490 U.S. 228 (1989) (plurality opinion). Discovery is required to develop and produce

such evidence in order to permit the assigned Judge to make an informed determination

regarding a potential "mixed motive" proceeding.

## V.      Conclusion

Plaintiff has properly stated his claims in Counts I, II and VI and thus Defendant's

Motion to Dismiss under Rule 12(b)(6) must be denied. This case is not a proper subject for

summary judgment as Plaintiff has not yet had the opportunity to conduct the discovery to which

he is entitled, and thus Defendant's Motion for Summary Judgment must be denied.  Plaintiff is

an aggrieved employee and has raised in all of his claims matters for which relief is available as

a matter of law. Federal EEO law prohibits discrimination affecting the terms and conditions or privileges of employment and should be accorded a liberal interpretation to effectuate the intention of Congress to eliminate the inconvenience, unfairness, and humiliation of discrimination. *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971). Denying that Plaintiff is an aggrieved employee would be an improper, overly-burdensome interpretation of the EEO laws. Accordingly, summary judgment would be improper in this case and Plaintiff should be given the opportunity to be heard and the Agency should be put to its proof.

For the reasons stated above, Defendant's Motion should be denied in all respects.

## VI.     Request for Hearing

Plaintiff respectfully requests a hearing on Defendant's Motion and his Opposition

thereto.

February 5, 2007                            Respectfully submitted,


                                            _/s/  Steven J. Silverberg_____
                                            Steven J. Silverberg
                                            District of Columbia Bar #377376
                                            Attorney for Plaintiff
                                            1819 L Street, N.W., Suite 700
                                            Washington, D.C. 20036
                                            Tel: (202) 785-8499
                                            Fax: (202) 785-8470
                                            E-mail: sjsilverberg@erols.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EUGENE CASOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1459 (CKK)** |
| | ) | |
| **MIKE JOHANNS,** | ) | |
| **Secretary of the United States** | ) | |
| **Department of Agriculture,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

UPON CONSIDERATION of Defendant's Motion to Dismiss Plaintiff's Third Amended

Complaint, or in the Alternative, for Summary Judgment, and Plaintiff's Opposition thereto, and

for good cause shown upon the record, it is on this _____ day of _____, 2007, hereby

ORDERED that Defendant's Motion should be and is hereby DENIED.

_____
**Colleen Kollar-Kotelly**
**UNITED STATES DISTRICT JUDGE**

**cc:   Counsel of Record via ECF**